5L 644
12L 332
3pi 680
4pi 638

E. C. REEVES, Ex'r, etc., v. W. P. REEVES et al.

WILL. *Church. Parsonage.* A devise to a church, a voluntary unincorporated association, of a lot upon which to build a church, is valid under sec. 1508 of the Code, but a devise of a parsonage, library or other personal property to such an association, without a trustee named in the will to take the title, is void, because not within the statute and no person to take the title.

FROM WASHINGTON.

Appeal from the Chancery Court at Jonesboro. H. C. SMITH, Ch.

I. C. REEVES for complainant.

J. G. DEADERICK for defendants.

FREEMAN, J., delivered the opinion of the court.

James Miller died in Washington county in February, 1874, leaving a will, which was duly proven in the county court of said county. He left his wife Elizabeth surviving him, who died in February, 1877,

leaving likewise a will, of which complainant is executor. All the children of the marriage died during minority, without issue, so that the father and mother died without leaving any descendants surviving them. This bill is filed for a construction of certain clauses in the will of each of the above parties.

The questions presented as arising on the will of James Miller, grow out of the following dispositions of portions of his property:

The first gives all his property of every kind to his wife, after payment of his debts, to be used, enjoyed and disposed of as she may see proper, with the following exceptions:

1st. It is my desire and will that the dwelling-house and lot, with its appurtenance fixtures, in Johnson City, Washington county, Tennessee, in and on which I now reside, shall be occupied, used and enjoyed by my said wife during her natural life, and at *her death*, descend to the Christian church, as a parsonage or ministerial house for said denomination of Christians.

2d. It is my will, and I so provide, that from one of my lots, south-east of Main street, in Johnson City aforesaid, a plat of ground, with a front of fifty feet and a depth of ninety feet, be set apart as a site for a Christian church, provided said church shall, within six years from the date this my last will and testament takes effect, erect a good and comfortable church building thereon; but should said church fail to do so, then said lot, or part thereof to be designated, shall revert absolutely to my said wife.

His wife and John D. Reeves were appointed executors of this will, and empowered to execute a deed "for the lot of ground as hereinbefore designated, when the church had complied with the condition expressed."

It is conceded the church at Johnson City is not an incorporated body, but only a voluntary association or congregation of Christians organized for purposes of worship. We shall not discuss at length the question of what is, or is not a valid devise to a charitable use under our law. That question has had, not only in our own, but in our sister States, an amount of exhaustive discussion that probably no other one question in our jurisprudence has received. It would not be of interest to the profession to go over this ground again, nor could it aid in the decision of the question now before us.

The rule given in *Green* v. *Allen,* 5 Hum., 169, and repeatedly followed since, is simple, sound and of easy application. It is: "If the charity be created either by devise or deed, it must be in favor of a person having sufficient capacity to take as devisee or donee, or if not in favor of such person, it must be definite in its object, and lawful in its creation, and to be executed and regulated by trustees, before the court of chancery can, by virtue of its extraordinary or simple equity jurisdiction, interfere to enforce its execution. In other words, it must have all the elements of a valid gift of the title, either directly to the beneficiary, or to a trustee with the trusts definitely settled, so that they can be fairly executed.

by the court, by compelling the trustee to perform them."

There can be no question that, under this rule, the gift of the home for a parsonage must be held void. While the purpose of the gift is clear to be understood, as it most generally is in such cases, the gift is to one not entitled to take, not being a person in law, or a body recognized by it.

It is insisted, however, that by sec. 1508 of the Code (act of 1843), this devise can take effect. It is: "Any religious denomination or society, whether incorporated or not, may take by deed or otherwise, and hold not exceeding five acres of land at one place for purposes of public worship." We need but say that this language only authorizes such a body to hold land for purposes of public worship—in fact, was intended simply to authorize such bodies to receive and hold land, not exceeding the amount specified, as a site for the house of worship. This is clear from the next section, act of 1855–6: "All lands bought, or otherwise acquired by any religious society, shall be vested in a board of trustees, or other persons designated by the members of such denomination or society, for the use and benefit thereof." This gift is not to such persons, even if any such existed, and therefore fails.

It is argued that, under a liberal construction of these sections, we should hold that a parsonage, as it is termed, might be held to be a house or the land as held for purposes of public worship. A parsonage is but a house in which a minister of the gospel re-

sides, and has no more relation to public worship than the clothes he wears or the horse he rides. Both of these are incidentally convenient and necessary for the comfort of the minister, but have no necessary or natural connection with public worship. The theory can only be sustained on the idea, that whatever is useful or convenient, or may be usefully used for the benefit of the minister who conducts the worship of the church, is to be included in the language—"may take and hold by deed or otherwise five acres of land at one place for purposes of public worship." This theory simply adds to the statute arbitrarily, on the idea of convenience, what is not included in it nor intended. That this gift cannot be held included under this section, seems to us conclusively shown by the fact that there is a gift of a separate and distinct lot, nowise connected with this, to the church for purposes of public worship. The distinction between the two objects is here clearly marked. For that purpose the testator has chosen to give a body of land fifty feet front and ninety feet deep, and this the church can take under the other clause. We are now called on to hold that the other gift, specifically for another and distinct purpose, to-wit, the residence of the minister, was also for religious or public worship, and so good. The fact is, a residence for the minister is not for public worship any more than his barn or stable is. It is for the use of his family, for the shelter and comfort of himself and them, exactly as a lawyer's residence is, or a physician's is. Public worship might be had in

either of these as well as the minister's house, but it could not be said the land on which they stood was held for public worship by reason of such use.

We need but say, in reply to the argument based on the rule that a court of equity will not suffer a valid trust to fail for want of a trustee, but will appoint one, that the rule has no application to a case like the present. Its usual if not universal application is to cases where a trustee is designated, who fails from any cause to act. Be this as it may however, it is not in this case the failure of a validly created trust for want of a trustee, but the failure is to create the trust at all, or the failure of the gift entirely, because of want of capacity of the donee to receive, and no conveyance to any one in trust for such party, with the objects of such trust defined.

The second gift of the lot must stand on a different ground. The gift, when fairly construed, is to the church, on complying with the condition annexed, as is seen by the provision, that if the condition is not complied with it shall revert or return absolutely to his wife. The executors have no title given them, but only a naked power to convey in the event of compliance.

Construing the clause as a gift or devise to the church, subject to the condition, as a site for a building as a house of worship, under the section of the Code quoted, the church is a qualified corporation, and may take and hold for this purpose. The only question is, is the devise so specific as that it can be executed, and the executors compelled to execute the

power? The language is, "that from one of my lots south-east of Main street, in Johnson City aforesaid, a plat of ground, with a front of fifty feet and a depth of ninety feet, be set apart as a site for a Christian church, provided," etc. In the concluding clause the executors (or either one of them) are directed and empowered to execute a deed of conveyance for the lot as designated, on compliance with the condition. The facts show the church has built the church, no doubt with the assent of the widow. We think the trust is specific, and the duty imposed on the executors, or one of them, to designate one of the lots described and make the conveyance, on compliance with the condition by the church. The same strictness as to description of property is not required in wills as in more formal conveyances by deed, and the rule, that that is certain which may be rendered certain, will meet any difficulty in ascertaining the lots designated. They can be readily ascertained by reference to the title deeds of the devisor; and then the executors have exercised their discretion, as was their duty, in making the selection. This gift must be held valid.

A question in addition is presented on the third clause, which is a gift of stock or shares in a patent, called the "Eagle Wing Screw Propeller." This is to be "held by my said wife, as agent for the Christian Church of the United States of America," and that, as such agent, she control fully the same, and after payment of incidental expenses connected with the management or sale of said interest, that

the net proceeds arising from the sale or growing out of said interest be paid by her to an authorized trustee to be appointed by said church; and my direction and request to said trustee and church as aforesaid is, that such funds. be used in a manner best to promote the general interest of said church."

The denomination thus designated has no corporate existence, no general governing or representative body, but is simply composed of a number of independent congregations, having no other connection except general homogeneity in creed and practice.

This gift must fail, for several reasons.

Assuming that the wife was made the trustee of the fund, to pay over to the other trustee, there was no party in existence who could be the beneficiary, so far as receiving the fund was concerned, and, in the nature of things, with such an unorganized body as the said Christian church, there never could be. No such trustee is shown to have been appointed, and if one had been appointed, then the trust is not saved under the most liberal construction that has yet been given to such a trust in the case of *Dickson et al.* v. *Montgomery et al.*, 1 Swan, 367, where the rule stated is, "if the fund be vested in a trustee, to be managed and controlled by him for a lawful, definite, charitable use, the gift will be valid, though there be no person in being capable of suing for its enforcement."

The purpose in this case is, "to be used in a manner best to promote the interest of said church and the cause of God." It could hardly be claimed

that this can be a definite trust, under even the most liberal construction that could be given to the language used.

This disposes of the questions on this will so far as the devises are to charity.

The general gift to the wife, in the first clause, takes effect as to all his property both real and personal, and she may dispose of it as she might choose, by will or deed, except such as has been given to these charitable uses. In the parsonage lot she has. only a life estate given her, and the remainder failing, as to this it descends under our law to his heirs.

As heretofore stated, the wife died some years after her husband, first making her last will and testament. Several questions are presented in the construction of this will, which we now proceed to dispose of.

By the second clause in said will, she gives her "library and secretary containing it to the Christian church at Johnson City," and directs it shall always remain in the house, under the charge of the minister of the church who may occupy the house, as set forth in the will of her husband. This gift, being direct to the church, fails for want of a party competent to take, under the principles heretofore announced.

After several special bequests to her relations, and direction as to sale of her real estate and disposition of proceeds, in the eighth clause bequeaths the remainder, after paying off bequests and expenses, to be paid to the heirs of her two sisters equally. We need scarcely cite authorities to show that the word "heirs" here is not used in its technical sense, but

means children. Such was evidently the sense in which the testatrix used the word, and her intention, when fairly arrived at, is to govern in the construction of her will, and this purpose carried out.

The children of the two sisters living at the death of the testatrix, the time when by our law the will takes effect, will take this property under this clause. This disposes, we believe, of all the questions presented in this record. A decree will be drawn in accord with this opinion. Costs of this court out of the fund; of the court below, as directed by the chancellor.

TURNEY, J., dissents as to the house given for a parsonage.

WILL. *Residuary devisee.* Since the alteration of the law in this State by which a will is made to speak and take effect as to realty, as well as personalty, as if executed immediately before the death of the testator, a special exception of property from a residuary devise and giving it to another devisee, will not prevent the excepted property from going to the residuary devisee, if the excepting devise fail because void, if it appear from the whole will that the property was excepted merely for the purpose of giving it to the specific devisee, and not in order to take it away from the residuary devisee.

Upon a petition to rehear, COOPER, J., delivered the opinion of the court.

James Miller, by his last will, made the following disposition of his property :

"First. It is my desire, and I so declare, that, after the payment of my funeral expenses and legal

debts that may exist against me, all my estate, real, personal and mixed, of all and every kind, shall descend, absolutely and without condition, to my beloved wife, Elizabeth W. Miller, to be used, enjoyed and disposed of as she may see proper, with the following exceptions and specifications only, to-wit:

1st. It is my desire and will that the dwelling-house and lot, with its appurtenances and fixtures, in Johnson City, Washington county, Tennessee, in and ·on which I now reside, shall be occupied, used and ·enjoyed by my said wife during her natural life, and at her death to descend to the Christian church of which I am a minister and member, to be used forever by said church as a parsonage or ministerial house for said denomination of Christians.

2d. It is my will, and I so provide, that from one of my lots south-east of Main street, in Johnson City aforesaid, a plot of ground, with a front of fifty feet and a depth of ninety feet, be set apart as a site for a Christian church, provided said church shall, within six years from the date of this my last will and testament takes effect, erect a good and comfortable church building thereon; but should said church fail so to do, then said lot, or part thereof to be designated, shall revert absolutely to my said wife."

3d. "It is my will" that an interest in a certain patent be held by his wife as agent, the net proceeds to be paid to a trustee appointed by the Christian ·church of the United States, to be used in a manner best to promote the general interest of said church.

4th. "It is my will that William Miller, a colored man and former servant," have ten acres of land designated.

Second. Appoints executors with certain directions.

The devise of the testator's dwelling-house and lot as a parsonage having been held to be void as a charitable bequest, the question arises whether that property goes to the testator's widow under the will, or descends to his heirs as undisposed of by the will.

A general residuary bequest of personal estate carries to the residuary legatee not only such personal estate as the testator did not attempt to dispose of by his will, but also such as had not been effectually disposed of, as lapsed legacies and void legacies. The presumption is that the testator did not intend to die intestate as to any portion of such property, and took away some of it from the residuary legatee only for the sake of the particular legatee. *King* v. *Strong*, 9 Paige, 94; *Cambridge* v. *Rous*, 8 Ves., 12. The rule was otherwise by the common law as to realty, because by that law a devise of realty was in the nature of a conveyance by deed, and only operated on lands of which the testator was seized when he made his will. *Brydges* v. *Duchess of Chandos*, 2 Ves. Jr., 427; *Wynne* v. *Wynne*, 2 Swan, 407. The alteration of the law, made in this State and in other States, by which a will is made to speak and take effect as to realty, as well as personalty, as if executed immediately before the death of the testator, and to convey all the real estate of the testator had at his decease, removes the distinction between real

and personal estate, and harmonizes the testamentary dispositions of real and personal estate. *Prescott* v. *Prescott* 7 Met., 146; *Faust* v. *Birner*, 30 Mo., 414; *Morris* v. *Henderson*, 37 Miss., 492. Although it is more common to find the residuary clause of a will at the conclusion of the instrument than at the beginning, the practice is not uniform, and the same construction must obtain in either case, the object of all construction being to carry into effect the intention of the testator. The special exception from a residuary bequest of certain property and giving it to another legatee, will not prevent the excepted property from going to the residuary legatee, if the excepting legacy fail by an event analogous to a lapse, or in consequence of the indefinite manner in which the trust in favor of other parties was expressed. *Evans* v. *Jones*, 2 Coll. C. C., 516; *James* v. *Irving*, 10 Beav., 276; *Bernard* v. *Minshull*, Johns. (Eng. Ch.), 276. In the last of these cases the authorities are reviewed by Vice-Ch. Wood, now Lord Hatherley, who says: "All you have to consider is, whether the property is excepted in order to take it away, under all circumstances and for all purposes, from the persons to whom the rest of the property is given, or whether it is excepted merely for the purpose of giving it to somebody else. If the latter, and the gift to that somebody else fails, the donees of all except this property are entitled to take the whole."

The will under consideration, by its first item, gives the residuum of the testator's entire estate to his widow absolutely in the most unmistakable lan-

guage. The whole will shows that the property specifically devised was excepted out of the residuum only for the purpose of giving it in charity. That object failing, the residuary legatee was clearly intended to take.

Decree accordingly.

FREEMAN, J., upon the petition to rehear, delivered the following dissenting opinion :

A most respectful but very earnest petition for rehearing and reconsideration of one question in the construction of the will of James Miller, is presented in this case. We have carefully examined the argument presented, and give our conclusions.

The first clause of the will is as follows: "It is my desire, and I so declare, that after the payment of my funeral expenses and any legal debts that may exist against me, that all my estate, real, personal and mixed, of all and every kind, shall descend, absolutely and without condition, to my beloved wife, Elizabeth D. Miller, to be used, enjoyed and disposed of as she may see proper, *with* the following exceptions only, to-wit :

"First. It is my desire and will that the dwelling-house and lot, with its appurtenance-fixtures, in Johnson City, Washington county, Tennessee, in and on which I now reside, shall be occupied, used and enjoyed by my said wife during her natural life, and at her death, to descend to the Christian church of which I am a minister, to be used forever by said

·Christian church as a parsonage or ministerial house for said denomination of Christians."

We held the gift to the church void; the remainder, therefore, fails.

It is insisted this clause of the will is a general devise of the entire estate to the wife, subject only to funeral expenses and payment of the testator's debts. But this is the radical error in the view taken by petitioners. The devise and gift is of all his property, with the following *exceptions*—not subject to the following limitations. That is, I give all my property to my wife, except the following specified property, which I do not so give her. *Except*, means to take out, and to exclude from the general words previously employed. Then if the specified property is *excepted* from, taken out of the general provision first made, it cannot be included in it, unless a thing can be conceived as· both being included and excluded at the same time—a contradiction in its statement on its face.

The duty of courts is to construe the language used by a testator, and from that language ascertain his intentions—not to find out an intention, and then adapt the language to effectuate that supposed end.

The radical error in the view of petitioners, as we have said, is in assuming that there is an estate given in this will by the first clause to the wife, subject to a limitation over to the church, and that limitation failing, the general gift or devise takes effect; in other words, that the testator gave this house and lot to his wife in fee by the first clause, and then a life

estate or the use of it for life, and then a remainder in fee to the church, and this remainder failing, the wife has the right under the first clause. It is conceded that if the devise in the first clause to the wife did include this house and lot, and the devise was then subjected to a limitation over, which failed, then she would certainly take. But this could only be in a case where the limitation over was subject to a contingency by which it might be defeated, as it is hardly conceivable that a party would give an absolute estate in property to one party, and then in the same will give the same property absolutely to another, no contingency being specified on which either estate should be defeated. But, taking the language of the first clause, and it is certain no gift of this property can be made out from it. He gives all his property, in the first part of the clause, absolutely and without condition to his wife, to be used and enjoyed by her as she may see proper, but he adds, with the following exceptions and specifications only. He then proceeds to specify the exceptions, to-wit, the "dwelling-house and lot, with its appurtenance-fixtures," and this "shall be occupied, used and enjoyed by her for her natural life, and at her death to descend to the Christian church" of which he was a member. Now taking this language, and it seems clear and beyond dispute that it means, I give my wife all my property, to be used and enjoyed as she thinks proper, *except* the dwelling-house and lot, this I give her the right only to use and enjoy for her life, and then I give it to the church absolutely for

a' parsonage.    In  plain  words,  he  has  given  her  all'
his  property,  with  certain  exceptions,  and  then  he  has
given  the  excepted  property  as  he  desired,  and  so  it
is  . all  disposed  of,  and  there  his  will  ends. .

.  This  will  be  perhaps  clearer  by  an  illustration.
Suppose  testator  had  owned  six  horses,  and  had  said,
I  give  all  my  horses  to  my  wife,  to  be  used  as  she
thinks  proper,  except  one  bay  horse  now  owned  by
me—that  she  shall  use  for  two  years,  and  then  it
shall  go  to  A.  B.  absolutely.    Could  it  be  maintained
that  the  general  words  giving  all  his  horses  carried
this  particular . horse?    We  take  it,  not.    What  can
be· the  difference  in  principle  between  a  horse  and  any
other  property,  we  are  unable  to  see.    The  obvious.
reason  why  he  did  not  give  her  this  property  by  the
first  clause  is,  that  he  intended  to  give  it  to  the
church,  therefore  did  not  intend  to  devise  it  absolutely
twice.    We  must  hold  he  did  so,  however,  to  sustain
the  view  of  the  petitioners.                                              .

I  can  and  do  suppose  the  testator  would  have·
given  this  property  to  the  wife,  if  he  had  anticipated
the  fact  that  the  church  would  not  take  the  property·
given.    But  that  he  has  thus  anticipated  and  pro-
vided  for  a  contingency  that  he  never  dreamed  would.
occur,  is  what  I  am  unable  to  see.    It  is  certain  he
did  not  anticipate  such  failure,  and  so  it  is  certain  he
did  not  provide  against  what  was  not  foreseen.    As.
he  has  not  provided  for  this  contingency,  to  strain
his  words  to  meet  the  new  exigency,  is  not  to  con-
strue,  but  to  make  a  will  for  him,  and  add  a  pro-
vision  that  he  has  not  made,  because  we  suppose  he

would have made it had he anticipated, what he did *not* anticipate, the failure of the disposition he had made of the property to the church. The will shows that he understood what he was doing, as we have construed it, for when he gives the lot to the church on which to erect a house of worship, he annexes a condition that they shall build on it, and then provides, if this condition was not performed, then this property should go to the wife. Why provide it should go to her on failure to perform the condition, if he understood himself as giving it to her by the first clause? But this shows he did understand there was a condition on which this devise might fail, and provided for it by giving the property over in this failure; but that as to the other property, he anticipated no such failure, did not dream the gift might not take effect, therefore made no provision for such an event, as in the other case. The contention now is, that we shall so construe his will that we shall assume the contingency of failure of this devise was anticipated by him and was provided for, and by such construction meet a new exigency, that was not in the mind of the testator as a state of things that would ever exist. This would be to make a provision he has not made, because a state of facts has presented itself which he did not anticipate. Ingenuity may do this, but it will not be a construction and enforcement of the will of the testator as made, but the making of one for him, which courts have no power to do. What the testator would have done had he anticipated the failure of his devise to the

church, we may surmise but cannot know, and have no right to speculate upon such a question.

Since writing the above, my attention has been called to a paragraph from an opinion of Vice-Chancellor Wood, in England, cited in a note to the third edition of Redf. on Wills, vol. 2, t. p. 117. The case, as far as we can gather it from the meagre statement of the note, was a gift of personalty, and the property in question was excepted from the operation of the residuary clause of the will in order to be given in trust for the benefit of other parties, which gift failed in consequence of the indefinite manner in which the trust was created, and this property was held to fall into the residue and go to the residuary legatee. The Vice-Chancellor said: "All you have to consider is, whether the property is excepted in order to take it away, under all circumstances and for all purposes, from the persons to whom the rest of the property is given, or whether it is excepted merely for the purpose of giving it to somebody else; if the latter, and the gift to somebody else fails, the donees of all except this property are entitled to take the whole." This was under a general residuary clause. In another case cited in the same note, decided by the same learned judge subsequently, where leaseholds were given in a manner void for remoteness, and the question was whether they passed to the residuary legatee, he held that the *intention* of the testator must be entirely disregarded in reference to their exoneration from the trusts of the residuum if they were allowed to fall into that fund, and therefore they did not.

Taking the two cases together, and they but make out the principle, that the intention of the testator to be derived from his language is to govern, and where the intention is that the property is to go to the residuary legatee, then it goes, the language including it; and where, from the language used, the intention is that it shall not go under a residuary clause, it shall not so go.

This is all clear, and need not be questioned; but I am unable to see its application to the case before us. The principle is laid down as to a gift of personalty in the first place, and there is a settled distinction, long established, with hardly an exceptional case to the contrary, in England or America, between a bequest of personalty in such cases and a devise of realty. It is thus stated in a note to p. 118 of Redfield on Wills, vol. 2: "There is a settled distinction between a void or lapsed legacy or bequest of personal estate, and a void or lapsed devise of real estate, which obtains both in England and America. The former falls into the residuum, and the latter goes to the heir." For which he cites numerous cases, both English and American. Before going, however, into this distinction, it is proper to look at the difference between this case and the case of a residuary clause of a will. Such a clause is one giving all the "rest and residue of my property," or disposing of all the balance of my estate, or some equivalent words, and is intended by its very terms and the nature of the thing, to give to the residuary legatee all the property not otherwise disposed of

So that it may well be held, that the language in-
cluding all property not otherwise disposed of by pre-
vious clauses of the will, may well include personalty
attempted to be disposed of, but as to which the dis-
position fails, either on account of death or incapacity
of the party to take.

But here we have no such general residuary clause,
but only a will disposing of property specifically to
certain parties, the property to go to each specified,
and no more; no general clause that will dispose of
all property undisposed of, but only specific bequests
and devises, designating what each shall take, and
what estate be enjoyed by such labor.    It would be
an abuse of legal language to say, the first clause of
this will is a residuary clause, or that the rules
applicable to the construction of such clauses, can be
applied to it.    But even admitting it could be so
held, you must still look to the language of the tes-
tator, and see whether the language expresses the in-
tention to give the property or has given the property
to the claimant, the devise having failed as to the
party for whom it was intended.    After all, call the
clause what you may, if we are not to make a will,
but only construe one, and carry out the intent of
the testator as he has expressed it, the question is
simply one of interpretation of language, the ascertain-
ment of its plain, obvious and natural meaning, and
when that is ascertained, it fixes the rights of the
parties.

After all, technical rules are of but little help in
construction of wills, or former decisions on other

wills, if the great leading object of all construction is to be kept in view, that is, to arrive at what the testator has done, and for this we must look to the language he has used. When thus ascertained, unless in violation of law or public policy, his will must be executed as written, not as we suppose it would have been written, had the testator stood where we now stand, and with the same surroundings. It was once said by a lord chancellor, that the will ought to be looked upon as doing what the "testator would have done." *Dyose* v. *Dyose*, 1 Peere Will., cited in note to 2 Red. on Wills, 119. But the case is only cited above to say: "This has been regarded as making such a will for the testator as he probably would desire to have made, if he could have been consulted at the time of the decision, and it is added, the case has not therefore been approved." The construction sought to be maintained as I think in this case is, however, precisely this, and nothing more. If the testator could now be consulted, he might possibly, and even probably would make the disposition of the property sought to be made out in favor of his wife, if she were living. But as she is dead, it is more than we can say, that he would give the property to her heirs in preference to his own.

The true principle in all such cases is thus given by Lord Cottenham. (Note to R. on W., vol. 2, p. 164.): "The only safe way of determining what a testator intended, is to look at what he has said. Whatever may be said or thought of his motive for the gift to the next of kin, the 'gift is there.' It

stands as a substantive disposition in the will, and I can find no principle for taking that gift away upon a speculation of what the testator *might* have done under *different* circumstances."

Applying this sound principle, and there is no difficulty in the case. The language is plain, unambiguous, and is easy to be understood. We only find difficulty when we propose to find out what might have been done under the *new* state of circumstances, not anticipated by testator, consequently not provided for.

But conceding for the argument that this clause is the equivalent to a residuary clause, which it is not, then you must take its language, as said by Vice Chancellor Wood, in the case quoted above, and, if from that, the property is excluded by the testator from its operation, then that must be conclusive in the construction to be given.

Now take the language of the clause: A gift of all his property, real and personal, to his wife, "to be used and enjoyed as she may see proper, with the following exceptions and specifications *only*, to-wit: that is to say, I give her all my property except the following, that is, the home place or dwelling house, and that she shall use and occupy for life, and then I give it to the church." How this language can be construed as giving her the absolute property in the house and lot expressly excepted from the gift, I am at a loss to see or understand. She is to have the entire property, on this view, on condition the gift to the church fails, and at the same time is to use and

enjoy it for life, that is, have a life estate. Did the testator so intend, or even have such a thought in his mind? If not, to hold she takes under the will, is to hold he has done what he did not dream of, and met a contingency never anticipated. Now the fact is, we know, when we give free play to our minds,. that the testator had no thought of giving her anything but the use of this property for life, and then giving it absolutely to the church, and so he has done; but he has not said what he would have done, if he had known the gift to the church could not take effect. We may speculate about that, but he has not said, and could not have said, for the plain reason he did not anticipate any such result.

I have alluded to the distinction between a gift of personalty which fails, and a devise of realty—that in the one case, the personalty passes to the residuary legatee, but in the other goes to the heir. In the case of *Van Kleeck* v. *The Dutch Reformed Church*, 6 Paige Repts., 600, Chancellor Walworth reviews all the cases English and American up to that time, and· shows the rule to be established by all authority, and beyond all question.

The principle is, that everything that is ill given· and fails, falls into the residue, and it may be conceded, that in so far as the distinction between personalty and realty, as to whether it shall go under a general residuary clause, disposing of all the balance of property not otherwise specifically disposed of effectually,. so far as it depended on the question of whether the will should speak as really at the time of making it,

or at the death of the testator, is unnecessary or even abolished by our statute making wills speak as of the death of the testator, yet this could only have effect upon a strict residuary clause, and could have no possible effect on the construction of the language of specific clauses of the will of the testator, making specific dispositions of designated property, as we held at this term in the case of Allen's will. They are to be held as speaking at his death, but only in the language which he uses, not in words not used or thought of by him.

The views of Chancellor Walworth on the question of the construction of a will, where the will fails either from death of the devisee, or from incapacity to take are eminently sound, and to my mind unanswerable. He says: "As the testator is presumed to be *inops consillii* at the time of making his will, if he devises an absolute fee in a portion of his estate to a person who happens to be dead at the time, or to a corporation which is destitute of a legal capacity to take lands by a direct devise (the very case here), there appears to be as strong evidence of the nonexistence of any intention to have that portion of the estate pass to another person under the devise of the residue of the estate, as if he devised the same portion of the estate to a person who was then capable of taking, but who might become incapable by death during the life of the testator. I cannot see that in either case there is the slightest evidence of an intention on the part of the testator to give to the residuary devisee that portion of the estate, which he

Reeves v. Reeves.

believes he had just disposed of to another. The right of the heir devolving upon him by operation of law cannot be impaired by vague surmises of what the testator *would*, or *ought* to have done, if he had foreseen that the disposition he had made of his estate might be declared invalid or ineffectual. An heir can only be disinherited by express words or by necessary implication."

I think this reasoning applicable to the present case and controlling, and that beyond all question, the testator never gave the dwelling house and lot to his wife, nor intended to do so, not having done so; but having given it to another who cannot take, I am unable to infer an intention to do, what he clearly did not understand himself as doing, that the wife should take it to the exclusion of the heir.

In conclusion, I add, that all the doctrines laid down and discussed in the books, as to the effect of a residuary clause in carrying property ineffectually disposed of, as I think, have no application whatever to this case, for the simple reason that we have no residuary clause in this will. We have only specific dispositions, easily understood, and our sole business is to construe them. When this is done our duty ends.

The will of the testator, as shown by the language he has used, is to be ascertained and carried out; the results, as affecting one class or another, are matters in which we can have no concern, therefore not to be considered in arriving at a conclusion.

I have no doubt but that this property is legally undisposed of by will, and goes to the heir of testator be descent.