IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# WESTERN DIVISION.

JACKSON, APRIL TERM, 1890.

RHODES *v.* RHODES.

(*Jackson.* April 15, 1890.)

1. CHARITABLE BEQUEST. *To unincorporated churches void.*

Bequests: " I want a United States $1,000 bond given to Newcastle Church, in Hardeman County, Tenn.; want it registered in William Murphy's name, and the interest applied to the church annually, or as fast as due. I also want a $1,000 United States bond given to Mt. Moriah Church, Fayette County, Tenn.; want it registered in my name, and the interest applied to the church as fast as due." The churches named as donees were unincorporated.

*Held:* The bequests are void. The donees are incapable of taking a direct gift, being unincorporated, religious societies. Neither the

executor nor other person is made trustee for the administration of
these bequests. The purposes of the bequests are not sufficiently
definite to enable the Chancery Court to administer them or to
appoint a trustee to that end.

Cases cited and approved: Green v. Allen, 5 Hum., 168; Reeves v.
Reeves, 5 Lea, 644; Daniel v. Fain, 5 Lea, 324; White v. Hale, 2
Cold., 77; Dixon v. Montgomery, 1 Swan, 366; Cobb v. Denton, 5
Lea, 650; State v. Smith, 16 Lea, 662.


2. SAME.  *Statutory power of unincorporated religious societies to hold property.*

Our statutes have not empowered unincorporated religious societies to
hold bequests of the character involved in this cause. The only
power conferred is the one expressed: To hold, in the name of
trustees, a limited quantity of *land* for the purposes of public worship.

Code construed: §§ 2006, 2007 (M. & V.); §§ 1508, 1509 (T. & S.).

Cases cited: Reeves v. Reeves, 5 Lea, 644; Heiskell v. Chickasaw
Lodge, 87 Tenn., 685.

*Quære:* Can such societies hold parsonage property? Perhaps so be-
fore and certainly since the Act of 1889, Ch. 11.


3. SAME.  *Capacity to take bequest not affected by statute passed after testator's
death.*

The capacity of such societies to take a particular charitable bequest
cannot be enlarged by statute·enacted after the testator's death.


---

FROM FAYETTE.

---


Appeal from Chancery Court of Fayette County.
H. J. LIVINGSTON, Ch.

H. C. MOORMAN for Complainant.

H. B. FOLK for Respondents.

LURTON, J.   The will of Mrs.· Ada Murphy was admitted to probate December, 1881.   The question for decision is as to the validity of two bequests contained in the following clause of her will: " I want a United States one thousand dollar bond given to Newcastle Church, in Hardeman County, Tenn.; want it registered in Wm. Murphy's name, and the interest applied to the church annually, or as fast as due.   I also want a one thousand dollar United States bond given to Mt. Moriah Church, Fayette County, Tenn.; want it registered in my name, and the interest applied to the church as fast as due."

The churches thus designated as donees are unincorporated, voluntary, religious organizations, and, under the well-settled rule, are not capable of taking such a bequest.   *Green* v. *Allen,* 5 Hum., 168; *Reeves* v. *Reeves,* 5 Lea, 644; *Daniel* v. *Fain,* 5 Lea, 324; *White* v. *Hale,* 2 Cold , 77.

The testatrix is shown to have owned United States bonds, registered in her name.   Wm. Murphy, in whose name she directs that the bond given to Newcastle Church shall be registered, was the deceased husband of the testatrix, and in his life-time had been a member of that congregation, while she had been a member of Mt. Moriah Church, to whom the other bond is given.

It has been very earnestly argued that while these churches are not strictly corporations, yet they are *quasi* corporations, empowered to take and hold real estate as legal entities, under §§ 1508

and 1509 of the Code, and that this capacity to take and hold real estate constitutes them, in a limited or qualified sense, corporations, with capacity to be the recipient of a bequest such as that contained in this will. To support this position, counsel rely upon the case of *Heiskell* v. *Chickasaw Lodge*, 87. Tenn., 685.

The sections of the Code relied upon as giving capacity to these voluntary religious organizations to take this charitable bequest read as follows:

"Any religious denomination or society, whether incorporated or not, may take, by deed or otherwise, and hold not exceeding five acres of land at one place for purposes of public worship."

"All lands bought or otherwise acquired by any religious denomination or society shall be vested in a board of trustees or other persons designated by the members of such denomination or society, for the use and benefit thereof."

By the Act of 1883, Ch. 37, carried into the Code of Milliken and Vertrees at § 2008, provision is made for the conveyance of land so held, by such church-officers as may by the rules of discipline of such church be authorized to make such conveyance. This provision, however, being enacted after the probate of Mrs. Murphy's will, cannot enlarge in any way the capacity of these churches to take the bequests now in question. The charity must stand or fall as it was found to exist at the date of the death of the testator.

*White* v. *Hale,* 2 Cold., 77; *Daniel* v. *Fain,* 5 Lea, 325.

The capacity to take and hold real estate conferred by the sections of the Code quoted, operates to confer upon such a voluntary religious society the corporate right of existing as a legal entity for the purpose of holding and conveying as defined in the statute; and a devise of land for a church-site, to be conveyed when a church-building should be erected thereon, has been sustained as valid. *Reeves* v. *Reeves,* 5 Lea, 644.

But this does not constitute such local church a corporation, save in an extremely qualified sense. The power or capacity has been expressly limited to an authority to take land for the purpose of a church-site. *Ibid.,* 644.

Indeed, in the case last cited, this power was so narrowly construed as to prevent such a *quasi* corporation from taking a devise of a house and lot to be used as a church-parsonage. This view would seem to be hardly sustainable, inasmuch as a parsonage, in connection with a church, might be well deemed to be within the power to take land "for purposes of religious worship." However this may be, there can be no doubt but that a statute conferring *quasi* corporate capacity upon such an unincorporated body to take land for purposes of public worship, cannot, by the most liberal construction, be so extended as to confer power to take personal property. The reasons for conferring power to take the one kind of property may operate

41—4 P

as strongly in favor of the grant of power to take another sort of property; but such reasons should be addressed to the legislative authority, and not to the judiciary, whose duty is limited to the construction of the law as enacted by the legislative department of government. That this capacity to take land does not include capacity to take a bequest of personalty, was expressly decided, and the bequest of a library to such an unincorporated religious body was held void. *Reeves* v. *Reeves*, 5 Lea, 644.

The case of *Heiskell* v. *Chickasaw Lodge* is not in conflict with *Reeves* v. *Reeves*. Subordinate Lodges of Odd Fellows were, by the Act of 1847, empowered to take both *realty* and *personalty* not exceeding $10,000 in value. We held that while this power did not constitute them corporations, it did clothe them with the qualified power of taking property as if a corporation, for any purpose germane to the objects of their existence. *Ibid.*, 87 Tenn., 685.

It is next insisted that, by construction, the executor is constituted a trustee to take and hold these bonds, and pay over the interest to these churches. The rule is well settled that if the devise be to a trustee, to be managed and controlled by him, for a definite and lawful charitable use, the gift will be valid, though there be no person in being capable of suing for the enforcement of the trust. *Dixon* v. *Montgomery*, 1 Swan, 366; *Cobb* v. *Denton*, 6 Bax., 235.

We are of opinion that under no rule of construction can this bequest be held to constitute the executor a trustee to hold these bonds, and collect and pay over the interest to these churches. The bequest is direct to the churches, and not to the executor in trust for them. Owning registered bonds, her purpose was that the bonds given should be held by the church, and the interest only used by them. But it is insisted that a Court of Equity will not suffer a valid trust to fail for the want of a trustee, and that this trust should be saved by an appointment now made. This is not such a definite trust as could be executed by and through the Chancery Court. Such a trust would fail if the executor had been expressly appointed and named as trustee, for the reason that the direction as to the application and use of the income is too vague and indefinite. The executor would discharge his duty when he paid over the interest to the officers or members of this church. No direction is given by which he may see to its application and administration. Whether it should be applied to charity, to the employment of a minister, to the erection or maintenance of the church-building, or be distributed among the members of the church, would depend upon the will of the church-members when received. Having no corporate capacity, there would be no responsibility, and there could be no supervision of the use of the charity by the trustee or by the Chancery Court. Capacity in the church

to take and administer the annual interest upon this bequest, would imply capacity to take and hold and administer the principal itself. When the charity is so indefinite, and the beneficiary is incapable of taking, the bequest must fail, although the fund be given to a trustee. In the Reeves case a similar question arose. By the third clause of the will there construed, certain shares of stock were given by the testator to be held by his wife, "as agent for the Christian Church of the United States of America," with directions that she should pay over the proceeds or income "to an authorized trustee to be appointed by said church; and my direction and request to said trustee as aforesaid is that such funds be used in a manner best to promote the general interest of said church." The church thus made the beneficiary being an unincorporated body, this bequest, though made to a trustee for its use, was held void because indefinite and therefore incapable of supervision by the trustee or the Chancery Court. 5 Lea, 650, 651.

In the case of *Dixon* v. *Montgomery* the devise was to the treasurer of Clark-Erskine College and his successors in office, in trust, one part of the interest for the endowment of the college, and the remainder for certain definite religious uses under the direction of the "Associate Reformed Synod of the South." These bequests were saved because both the college and the synod were incorporated bodies. 1 Swan, 348.

In *Cobb* v. *Denton* there was a devise of lands

for the benefit of Friendship Church, an unincorporated religious association. This devise was held valid because the executors were expressly required to take and hold the land in trust, to apply the rent in the employment and payment "of a competent minister for said church." The object of the charity being expressly defined, and the executors being constituted trustees to hold the property in trust for this specific object, the devise was held to be good.

In the case of *The State* v. *Smith*, where the will of Bolton was construed, a devise to the County Judge of Shelby County, in trust, the interest to be applied to the education of the poor white children of the first district of that county, was sustained, because the education of the poor children of a particular district was a definite, charitable object, and, as such, capable of being administered by the trustee and supervised by the Chancery Court. 16 Lea, 662.

A bequest to an unincorporated, religious, local association, without defining how such bequest is to be applied, would not be saved, even if to a trustee, the income to be paid over to such church. Such a charity is too indefinite, and the beneficiary being incapable of suing, the bequest must fail.

Under the well-settled rule, as repeatedly announced by this Court, we are reluctantly constrained to affirm the decree of the Chancellor holding these bequests void.