## TURNPIKE CO. v. DAVIDSON COUNTY.

### (*Nashville.* January 19, 1901.)

1. TURNPIKE COMPANIES. *Charter provision granting exclusive privilege sustained.*

   A provision in the charter of a turnpike company "that it shall not be lawful to open or establish any other road so near as to injure or prejudice the interest of" said company, is not void or unenforceable by reason of vagueness or uncertainty. (*Post, pp. 261, 263, 267.*)

   Acts construed: Acts 1830, Ch. —; Acts 1831, Ch. 46.

   Cases cited: State v. Turnpike Co., 2 Sneed, 90; Talmage v. Transportation Co., 3 Head, 338; Memphis, etc., Co. v. Williamson, 9 Heis., 326; Turnpike Co. v. Montgomery County, 100 Tenn., 417.

2. SAME. *Same.*

   And such provision in the charter of a turnpike company, granted by statute prior to Constitution of 1870, constitutes an inviolable contract. (*Post, p. 262.*)

   Case cited: Railroad v. Hicks, 9 Bax., 442.

3. SAME. *Condemnation of their exclusive charter rights for public benefit.*

   The exclusive right of a turnpike company secured by its charter may be condemned and taken for the public use and benefit, upon just compensation being made therefor. (*Post, p. 267.*)

   Case cited: Turnpike Co. v. Montgomery County, 100 Tenn., 425.

4. CORPORATIONS. *Construction of charter.*

   Doctrine reaffirmed that, in the construction of charters of incorporation granted by legislative act, nothing shall be taken or conceded, as against the State or public, in favor of the corporation but what is given in unmistakeable terms or by an implication as clear. (*Post, pp. 262, 263.*)

Turnpike Co. v. Davidson County.

Cases cited: State v. Turnpike Co., 2 Sneed, 90; Talmage v. Trans-
portation Co., 3 Head, 338; Memphis, etc., Co. v. Williamson, 9
Heis., 327; Turnpike Co. v. Montgomery County, 100 Tenn., 417.

FROM DAVIDSON.

Appeal from Chancery Court of Davidson County.
H. H. COOK, Ch.

JOHN J. VERTREES, PARKS & HARWOOD for
Turnpike Co.

J. A. CARTWRIGHT for Davidson County.

WILKES, J. This is a bill by the turnpike
company to enjoin the county of Davidson from
opening and building a public road near Nash-
ville, to be called Arlington Avenue.

The road, as projected, is about one-half a mile
long, and extends from a point on the com-
pany's pike just beyond its first tollgate in an
oblique or diagonal direction to the Stone's River
or Chicken pike near the southeast corner of
Mount Olivet Cemetery. The road simply extends
from the one pike to the other, and not beyond
either, in either direction. The theory of the bill,
and ground of complaint, is that the proposed
road will be used and will operate as a shun-
pike, whereby payment of tolls will be avoided

at its first and most valuable and important toll-gate. But if not, technically speaking, a shun pike, still the turnpike company, has a right to prevent the opening of the road because it violates a provision of its charter, and injures or destroys an exclusive right which the charter of the turnpike company confers upon it.

The Chancellor held against the complainant company, and denied it any relief, and dismissed its bill, and the company appealed.

The Court of Chancery Appeals reached the same result as the Chancellor, but upon different grounds, and the complainant has appealed to this Court and assigned errors.

The case, as it comes to this Court, depends upon the validity of the charter provision, and its proper construction and interpretation.

The Court of Chancery Appeals report as facts that the proposed road, if opened, would be a great public convenience, and that it was not designed or intended as a shun pike for the purpose of depriving complainant company of its tolls, but from a sincere purpose to subserve the public convenience, but that it will materially injure the plaintiff, inasmuch as it will be used by a large number of people as a way of getting into the city of Nashville and leaving it, without having to pay toll at gate No. 1 upon complainant's road, and this damage is estimated at from $500 to $1,500 per annum. It is not insisted that

outside and independent of the charter provision
referred to the complainant could prevent the
building of this road, so that we pass at once to
the consideration of this feature of the case, in-
asmuch as complainant now bases his right to the
relief prayed for upon the provision in the char-
ter. Upon this point see the case of *Turnpike
Co.* v. *Davidson, County,* 7 Pickle, 291; *Turnpike
Co.* v. *Montgomery County,* 16 Pickle, 417.

The complainant company was chartered in 1831
under Chapter 46, Acts of that year, and was
organized and has been operated under that charter
ever since. That Act gives to the company all
the rights, privileges, and immunities which had
previously been conferred by the Acts of January
4, 1830, upon a turnpike to be built from Nash-
ville to Murfreesboro, and it is in this latter
charter that the provision in question is found,
at Sections 7 and 8. Section 7 is as follows:
"That it shall not be lawful to open or establish
any other road so near as to injure or prejudice
the interest of the said Nashville & Murfreesboro
Turnpike Co."

Section 8 provides that the rights, privileges, and
immunities granted to the original members or
stockholders of the company should pass to and
vest in their successors. This is all that is nec-
essary to set out of the charter, and conceding,
as found by the Court of Chancery Appeals, that
the present company is entitled to all the rights,

privileges, and immunities of the original company, the question recurs, Is the complainant company, by virtue of these charter provisions, entitled to enjoin the opening and use of this road as projected?

It is not necessary to give any technical definition of the terms rights and privileges and immunities, as used in the charter. It is sufficient to say that under these terms are embraced such things as are valuable to the company in the exercise of the franchises conferred upon it. There can be no serious doubt but that the Legislature could grant to the complainant company such a right, privilege, or immunity as is contained in this Act. *Railroad Co. v. Hicks,* 9 Bax., 442; *Binghamton Bridge,* 3 Wallace, 51, 77; *Humphreys v. Piques,* 16 Wallace, 244. Nor can there be any serious doubt but that upon the acceptance of a charter with such provisions it became a contract between the State and the complainant company, which, under Section 10, Article 1, of the Federal Constitution, would become inviolable. As to what will be the ultimate effect or result of this holding we will consider further on.

We are now considering the question of the validity and proper construction of the provision.

The Court of Chancery Appeals was of opinion it was not sufficiently definite to found a right in complainant to the relief asked in this case, and that Court cites and relies in its holding

upon principles announced in the following, among other cases: *State* v. *C. & R. T. P. Co.*, 2 Sneed, 90; *Talmage* v. *N. A. C. & Tr. Co.*, 3 Head, 338; *Memphis Gayoso Gas Co.* v. *Williamson*, 9 Heis., 326; *Turnpike Co.* v. *Montgomery County*, 16 Pickle, 417-421.

In the first of these cases it is said "nothing passes against the State or public by implication."

In the case last cited it is said: "Nothing is taken or conceded to a corporation, but what is given in unmistakable terms or by an implication equally clear." And again, "The contract, to be effective, must be clearly expressed in the charter." Page 421. To the same effect see, also, *Vicksburg Railroad Co.* v. *Dennis*, 116 U. S., 665; *Slidell* v. *Grandjean*, 111 U. S., 412.

The correctness of this holding we are not disposed to question, but readily approve.

The Court of Chancery Appeals was of opinion that the charter provision was indefinite, in that it did not define the territorial limits or distance within which the road should not be constructed, and bearing upon this feature of the case the Court of Chancery Appeals cite the cases of *Enfield I. B. Co.* v. *Hartford Railroad Co.*, 17 Conn., 40 (42 Am. Dec., 716); *Piscatequa Bridge* v. *N. H. Bridge et als.*, 7 New Hampshire, 35; *Bridge Properties* v. *Hoboken Co.*, 1 Wall., 116; *Binghampton Bridge*, 3 Wall., 51, as illustrating

its position and ruling, and as indicating the proper mode and degree of definiteness requisite to create an exclusive right or franchise. The substance of the position taken by the Court is that if the provision were that no other road, parallel or practically parallel to the complainant's line, could be opened within any given distance— as, for instance, a mile or five miles or any other designated distance—that would be valid and definite. We are unable to agree with the Court of Chancery Appeals in their view of this matter. We cannot see that the fixing of exact distances or territorial limits is any more definite provision than the one incorporated in this charter. It is quite possible that the opening of a new road parallel to complainant's road, and within one mile or five miles of it, would not in any way injure complainant's road, and yet this is the test applied by that Court. It is certainly better that upon the question of opening a public road the test should be the necessity and convenience of the road on the one hand and the injury to the existing road upon the other. The public is certainly entitled to all the roads necessary for its use, and the complainant should not complain, no matter how near they were constructed to his road, if they did not injure it.

It is true that in the cases cited by the Court of Chancery Appeals the question is made to turn upon the matter of distance or territorial

limit, but this was because of the provisions of the charters which were under consideration, and which prescribe territorial limits. It does not necessarily follow that charters which do not fix such limits or zones are indefinite. In either case the question is one of proof—in the one case as to distance, in the other as to injury. The latter may not be as readily ascertained as the former, and by the same means of survey, but injury is susceptible of proof equally. as is distance. Now, in the present case the Court of Chancery Appeals has found that the new or proposed road is one of public convenience, but not one of public necessity, and that it will materially injure the complainant's road.

The vague and indeterminate conditions which the Court of Chancery Appeals imputes to the terms of the charter do not relate to it, but if they exist at all, pertain to the proof that must be made. Proof must be made in either case, and it may and probably would be harder to make in the one case than in the other. We have constant questions arising · in the Courts of "reasonable notice," "reasonable skill," "reasonable care," and "reasonable compensation," and while definite limits are not fixed in any of these cases, it does not follow that they are indefinite, since they are ascertainable by proper inquiry and judicial investigation. The charter provision is virtually as if it read, "No other road should be

opened or established so near this road as to materially reduce its revenues within the judgment of a Court of competent jurisdiction," and the Act could not be classed as vague and indefinite under such a provision.

In the one case it must be shown that the road complained of is within a certain geographical distance or territorial zone, in the other that it is a material injury to the established road. In the one case the test is a physical, in the other a financial one.

We are of opinion that the Court of Chancery Appeals is in error in their view of the case, and that complainant is entitled to relief, and the question now to be considered is the character and extent of the relief that should be granted. Before passing to this, however, we refer to the contention made for the county that the charter had reference to a parallel road or one virtually parallel to the existing road, and therefore a competitor with it. But this contention is not supported by the language or reason of the Act. The critical question is not whether the new road is parallel or has the same trend or direction as the established road, for there might be such a road without injury to the established road, but the question is, Does the new road, as constructed or projected, injure or prejudice the interest of the old road? If it does, it is within the inhibition of the charter, no matter what its

direction may be. As a matter of fact, however, the new road, when used in connection with the Chicken or Stone River pike, does make a line substantially parallel with the old road.

In the case of *Red River Bridge Co.* v. *Mayor and Aldermen of Clarksville* it was held that a grant by charter from the Legislature of an exclusive right to build a toll bridge within certain limits, although a contract, is such an exclusive right as must yield to the public interest, and the franchise acquired under it may be taken for the public use, upon just compensation being paid therefor, without violating said contract or impairing its obligation in the sense of the Constitution. This doctrine is recognized and approved in *Turnpike Co.* v. *Montgomery County,* 16 Pickle, 425, citing 6 Am. & Eng. Ency. Law, 545, 546; *Ayer* v. *Tuskaloosa Bridge Co.,* 27 Am. Dec., 655.

To the same effect are *Enfield Toll Bridge Co.* v. *Hartford Railroad Co.,* 17 Conn., 40 (42 Am. Dec., 716); *Piscatequa Bridge* v. *A. H. Bridge,* 7 New Hampshire, 85; *State* v. *Noyes,* 47 Mo., 189; *Mason & Harper Ferry Bridge Co.,* 17 W. Va., 396.

We are of opinion, therefore, that there is error in the decree of the Court of Chancery Appeals as herein indicated, and the decree of that Court is reversed and modified.

The cause is remanded to the Chancery Court

of Davidson County for a reference and ascertainment of the compensation that should be paid to the complainant for opening this road, and when the amount is ascertained and paid, the county shall be entitled to open and operate the road, and until that time the injunction will remain in force.

The costs of the cause up to the present time will be paid by the county.