SALES *et al. v.* SOUTHERN TRUST CO.

(*Nashville*, December Term 1944.)

Opinion filed February 3, 1945.

On Rehearing March 3, 1945.

A. B. Broadbent, Chas. V. Runyon, Austin Peay, and Collier Goodlett, all of Clarksville, for defendants-appellants.

W. D. Howser and Stout & Porter, all of Clarksville, for complainants-appellees.

Mr. Justice Neil delivered the opinion of the Court.

Complainants filed their original bill in the Chancery Court to have the court construe the will of Roland Gibbs, deceased. The bill alleged that the residuary clause of the will was invalid and that the testator thus died intestate, and that complainants, as heirs, are entitled to decedent's estate under the statutes of descent and distribution. By his will Roland Gibbs gave to his wife outright certain articles of personalty and left the remainder to the Southern Trust Company as Trustee, with directions to pay the income thereof to Mrs. Gibbs during her lifetime and to trench upon the *corpus* if the income did not amount to three hundred dollars per annum. The clause of the will in controversy is as follows:

"At the death of my wife, I hereby direct said Southern Trust Company, Trustee, to pay the remainder of said estate and any accrued interest thereon to the Trustees of the First Baptist Church of Clarksville, Tennessee."

The Chancellor and Court of Appeals held that the First Baptist Church, being a voluntary, unincorporated

institution, was incapable of taking this bequest, upon the theory that it was a gift in trust for a charity and that it was vague and indefinite as to its purpose and could not be sustained.

We granted *certiorari* and the question has been ably presented by counsel for all parties in interest. The assignment of error presents the sole question of the capacity of the church to take this bequest.

The First Baptist Church of Clarksville is a religious institution of long standing, but is a voluntary, unincorporated association. The testator, Roland Gibbs, had been an active member of the church for many years; he contributed of his means to its support in his lifetime and otherwise manifested a great interest in its progress. It cannot be doubted that he intended to make an outright gift to the church. No trust, charitable or otherwise, is attempted. Upon the death of Mrs. Gibbs the trust in her behalf terminated, the remainder interest being then due and payable to the trustees of the church. Much of the argument relating to charitable trusts and the authorities on that branch of the law to which our attention has been called are without application.

It is now well settled that an unincorporated church organization occupies a corporate status as to its acquisition, ownership, improvements, contracts, and dealings concerning the property owned and used by it for public worship, parsonage, and burial ground purposes.

Our statutes providing for the taking of property by unincorporated, religious denominations or societies are contained in Code, sections 4407, 4408, and 4409, as follows:

"Sec. 4407. Religious society; power to take and hold land.—Any religious denomination or society, whether

incorporated or not, may take, by deed or otherwise, and hold not exceeding five acres of land at one place for purposes of public worship or for a parsonage, and five acres for burial ground.

"Sec. 4408. Title vested in trustees.— All lands bought or otherwise acquired by any religious denomination or society, shall be vested in a board of trustees or other persons designated by the members of such denomination or society, for the use and benefit thereof.

"Sec. 4409. When trustees may sell.—In all cases where any elders, trustees, or other church officers, in any of the churches or organizations of any religious denomina-tion, shall have any lands conveyed to them for the use of their respective churches or congregations as building sites, or for any other purpose, by deed, grant, devise, or in any other manner, they or their successors in office, according to the regulations of such church or congrega-tion, may sell and convey the same by deed, which deed, when officially signed by such elders, trustees, or other church·officers, or their successors in office, shall pass the title, whether for life, for years, or in fee, to such land to the purchaser in as full and ample a manner as if said officers held the same as a corporation, and had conveyed it by deed under the corporate name.''

It will be observed that lands acquired by a religious denomination or society "shall be vested in a board of trustees or other persons designated by the members of such denomination or society, for the use and benefit thereof.'' Code, section 4408. The bequest to this par-ticular church is vested in trustees and the gift to the trustees of the church is nothing more than a gift to the church.

By a line of the decisions of this Court it has been held that these statutes confer a legal existence and entity

upon unincorporated religious associations, making of them quasi-corporations with limited capacity and powers. *Reeves* v. *Reeves,* 73 Tenn. 644; *Rhodes* v. *Rhodes,* 88 Tenn. 637, 13 S. W. 590; *Wilson* v. *Clinton Chapel African M. E. Zion Church,* 138 Tenn. 398, 198 S. W. 244, and others.

In *Wilson* v. *Clinton Chapel African M. E. Zion Church* we considered the liability of an unincorporated religious association upon a note executed by its trustees to pay for repairs on the church building and in a suit brought against the trustees of that church held the property of the church liable for the debt. While our statutes gave to unincorporated religious societies no expressed capacity to sue and be sued, we likened them to corporations proper which have such powers, whether granted in their charters, or not, and in 138 Tenn. at page 403, 198 S. W. at page 245, said:

"Every corporation in addition to the powers expressly conferred by its charter has such implied powers as are reasonably necessary to accomplish the purpose for which it is authorized. *Doty* v. [*American*] *Telephone & Telegraph Co.,* 123 Tenn. 329, 130 S. W. 1053, Ann. Cas. 1912C, 167; *Turnpike Co.* v. *Davidson County,* 106 Tenn. 258, 61 S. W. 68; *Turnpike Co.* v. *Montgomery County,* 100 Tenn. 417, 45 S. W. 345, 58 L. R. A. 155; *Union Bank* v. *Jacobs,* 2 Tenn. (6 Humph.), 515. Likewise these religious associations, endowed with certain powers expressed in the statutes and noted above, have such additional powers as are necessarily implied from those granted. The expressed authority to hold land for the purpose of public worship or for a parsonage implies authority to erect a house of worship and a house for the pastor. The authority conferred on the trustees of such an association to hold land for the use and benefit of the association and the authority

to sell such property implies a power to preserve and improve the same, so that it may be of use and benefit to the association, and may be maintained in condition to sell.''

In *Rhodes* v. *Rhodes,* cited in the *Wilson Case, supra,* the Court considered the effect of the statutes conferring capacity upon voluntary religious organizations to take a charitable bequest, even before the Act of 1883 which added authority to sell and convey, and in 88 Tenn. at page 641, 13 S. W. at page 590, said:

''The capacity to take and hold real estate conferred by the sections of the Code quoted, operates to confer upon such a voluntary religious society the corporate right of existing as a legal entity for the purpose of holding and conveying, as defined in the statute, and a devise of land for a church-site, to be conveyed when a church building should be erected thereon, has been sustained as valid. *Reeves* v. *Reeves,* 73 Tenn. 644.''

In this connection, the following from a recent leading text book is in point:

''In some jurisdictions unincorporated religious associations are considered to have quasi-corporate existence in law, with power to hold land and build appropriate houses, and to acquire and enforce contract rights.'' 45 Am. Jur., Religious Societies, Sec. 47, p. 757, citing *Phipps* v. *Jones,* 20 Pa. 260, 59 Am. Dec. 708. See Annotation, 32 L. R. A. 625.

■ ■ We think that every artificial legal entity, whether a full corporation or a quasi-corporation, has such implied powers as are necessarily implied from those granted. When the Legislature gave to these religious associations power to take land ''for purposes of public worship or for a parsonage'' it was clearly contemplated that a church house would be erected to effectu-

ate the one purpose and a dwelling house would be erected to effectuate the other purpose. Public worship could not be conducted nor the parsonage exist in this climate for a greater part of the time without shelter. Authority to erect and hold these edifices and use them for the purposes indicated necessarily implied a power to equip the buildings and maintain them in repair for such uses.

The legal capacity of a corporation to take and hold such property as is necessary to enable it to accomplish the purposes for which it was created is ascribed to every corporation regardless of expressed statutory sanction. 19 C. J. S., Corporations, sec. 1088, p. 627; 13 Am. Jur., Corporations, Sec. 773, p. 801.

So we think these quasi-corporations have authority to take such property as is necessary to the exercise of the functions granted to them by the law.

A church house could not be erected or equipped for public worship without money, nor could a parsonage be erected or equipped without the expenditure of money. No more could these buildings be kept in repair without the expenditure of money. It is easy, therefore, to conclude that the trustees of a church are empowered to take a gift of money to be used in the erection of a church house or parsonage on land that they are authorized to hold and to take money for the equipment and repair of these edifices.

The taking of money for such purposes is but a temporary holding of property. These quasi-corporations are not authorized either expressly or by implication to hold personal property permanently, nor are they authorized to hold real estate further than the statute prescribes. Being authorized, however, to take real estate for purposes for which the realty cannot be fitted without

the use of money, they are authorized to take money to effectuate such ends.

When an unqualified gift is made to any corporation it is contemplated that the gift will be applied to purposes for which the corporation was organized Indeed, such gift could not properly be applied to any other purposes. So when a gift of personalty is made to one of these quasi-corporations, it is likewise contemplated that it will be used for purposes for which such an organization is authorized to take and use the gift. In the case before us the First Baptist Church of Clarksville has a church house and a parsonage. For the reasons stated, we think it may take this gift of testator's money, not to be invested nor held, but to be expended for repairs, equipment, or enlargement of its church house or parsonage.

The Chancellor and the Court of Appeals undoubtedly felt bound in reaching their conclusions by the case of *Rhodes* v. *Rhodes, supra.* In that case it was held that these unincorporated religious societies could not take a gift of bonds, the interest on which was to be applied to the churches "as fast as due." This gift could by no means be construed as a gift of money necessary for upkeep of church houses. It was a gift of bonds to be held by the churches as investments, to be held permanently, with the right on the part of the churches to use the interest only but to use the interest in any way. Clearly our statutes give unincorporated religious societies no authority to take and hold personalty on such terms, no power to act as a trustee.

We think but one reasonable conclusion can be drawn as to the intention of the testator in making this gift to his church and that is, that the great building which housed the congregation should be fully main-

tained. He had been a loyal member of the church for over thirty-five years, was a member of the Board of Deacons, and had doubtless had a leading part in looking after the physical properties of the church. It is only natural and reasonable that he should have taken great pride in making additions to the building and thus provide a suitable and convenient place for conducting public worship, all of which included repairs to the Sunday School rooms and a parsonage for the pastor. For us to find otherwise would destroy the will; whereas, under many well considered cases, it is our duty to construe the will so as to sustain it rather than nullify it.

██ Consistently with the views we have indicated, we hold that it was the intention of the testator that, upon the death of his wife, Southern Trust Company, Trustee, be empowered to convert into cash, or its equivalent, the remainder and pay the proceeds over to the First Baptist Church of Clarksville, as a gift, to be received and used in its qualified corporate capacity for such purposes only as are within powers, express or implied, conferred by our statutes upon voluntary religious organizations to acquire, hold, and convert lands, and make and maintain improvements thereon, and incur obligations incidentally arising.

The assignment of error is accordingly sustained and the decree of the Court of Appeals is reversed.

### On Petition to Rehear.

Complainants have filed a petition to rehear, complaining that the Court erred in adjudging the costs against them. We are of opinion that the decree of the Court was erroneous in this regard and the petition is accordingly granted.

██ Considering the questions raised on this appeal, the equities of the case require that the costs, both in the lower courts and in this Court, should be paid out of the estate of the decedent Roland Gibbs.

The defendant Southern Trust Company has answered the petition of complainants and moved the Court to amend its final decree by remanding the cause for an order of reference. The motion is allowed and the cause remanded for the following purposes:

(1) The Chancellor is directed to order a sale of the real estate involved in the trust estate and pay the proceeds to the Trustees of the First Baptist Church of Clarksville, Tennessee, that is, the proceeds will be paid to such person or persons as Trustee of said church as may be designated by the official board of the church, after deducting all court costs, including reasonable attorneys' fees and such other costs as may be incurred in the sale of the real estate involved.

(2) Should there be any personal property belonging to the estate of the said Roland Gibbs and not subject to sale under the foregoing order, the same will be turned over to the Trustee of the First Baptist Church who is designated to receive the proceeds of sale of the real estate.

 The deacons and pastor of the First Baptist Church have filed an answer to the petition to rehear which raises the question as to the amount of income that Mrs. Roland Gibbs was entitled to receive under the will of her husband Roland Gibbs. The Chancellor held that she was entitled to the entire income and was not limited to the amount of three hundred dollars *per annum*. We think the Chancellor was correct in thus construing this provision of the testator's will. We therefore hold that

282

whatever sum of money in the hands of the Southern Trust Company, Trustee, that was due and payable to Mrs. Gibbs at her death, is liable for her debts, including funeral expenses, and any amount in excess will be paid to her next of kin. If necessary, the Chancellor will enter an order of reference regarding these issues.