## HILL v. HILL.—241 S. W. (2d) 865.

Eastern Section.   January 10, 1951.

Petition for Certiorari denied by Supreme Court, May 12, 1951.

620

Ambrose & Wilson, of Knoxville, for appellant.

Ely & Ely, of Knoxville, for appellee.

McAMIS, J. This suit was instituted on February 22, 1949, by John Harrison Hill against his brother, Rev. T. Wesley Hill, and the Trustees of Bible Baptist Church of Knoxville. The original bill sought a recovery against T. Wesley Hill on his personal notes aggregating more than $7,000 and a decree subjecting to the payment of the debt certain property on Cherokee Boulevard in Knoxville claimed by the Church. The bill charged specifically that, in 1943, T. Wesley Hill had fraudulently transferred or attempted to transfer the property to the Church for the purpose of hindering, delaying and defeating his creditors, both present and future, including complainant. Defendants filed a plea in abatement and an answer and on the issues thus joined the case proceeded to trial before the Chancellor on oral evidence.

Near the completion of the proof complainant filed an amended bill charging that the Church and its pastor, T. Wesley Hill, were for legal purposes one and the same or that the advancements for which T. Wesley Hill executed his personal notes were made to him either as a partner of the Church or as undisclosed agent for the Church in connection with certain real estate and building ventures revealed by the proof and that, if mistaken in his right to have the Cherokee Boulevard property subjected to the payment of his debt, a personal decree should be rendered against the Church.

The Chancellor found that T. Wesley Hill had no beneficial interest in the Cherokee Boulevard property, and, accordingly, sustained the plea in abatement. It was also held that the Trustees of the Church had no knowledge of the dealings between complainant and T. Wesley Hill; that there was no partnership relation with the Church; that it would be impossible to determine how much, if any, of complainant's funds went into the Church treasury and that, if the Church was the undisclosed principal of T. Wesley Hill, complainant would be required to elect whether to proceed against the agent or the principal and could not proceed, at the same time, against both. Complainant made no formal election but took a decree against T. Wesley Hill. His bill was dismissed as to the Church and he prosecutes this appeal. T. Wesley Hill did not appeal.

We cannot say the evidence preponderates against the Chancellor's holding that T. Wesley Hill had no beneficial interest in the Boulevard property.

For many years before the property was acquired, T. Wesley Hill was the pastor of the Bible Baptist Church, a completely autonomous, unincorporated, religious organization, operating without benefit of bylaws or direc-

tion from any higher authority. Customarily the title to the several church properties was taken in the names of three trustees selected by the congregation. In some cases, however, T. Wesley Hill acted as sole trustee being so empowered by the members in congregational meetings.

In 1943, Rev. Hill learned that an insurance company had acquired by foreclosure the house and lot on Cherokee Boulevard here involved. He contacted the Knoxville selling agent and sought to purchase it for the Church at $10,000 with a $1,000 down payment. It is undisputed that, at the suggestion of the agent that the Company would not likely agree to a sale to an unincorporated association with such a small down payment, the deed was made to T. Wesley Hill individually, and that he paid the down payment by borrowing $1,000 on his car, later fully repaid out of Church funds. To the extent paid, installments on the purchase price have likewise been paid by the Church.

Within a month after its purchase, T. Wesley Hill and wife executed and recorded a deed conveying the property to T. Wesley Hill, Trustee for Bible Baptist Church, containing the following provision: "To have and to hold said premises to party of the second part, his successors and assigns forever, in trust for the use and benefit of Bible Baptist Church, with full power and authority in said Trust to sell, lease, rent or convey at will, all or any portion of said property, for any amount and upon such terms as he may determine, without joinder of the beneficiary of said trust, or to mortgage or encumber all of any part of said property, without joinder of the beneficiary of said trust."

The title so remained for three years before the dealings out of which this suit arose. There is no showing that

T. Wesley Hill was rendered insolvent by virtue of the conveyance or, in fact, that he was indebted in any amount in 1943 or contemplated becoming personally obligated in any amount. He continued to occupy the property as a manse.

Complainant testified that he visited T. Wesley Hill after 1943 and that Hill related how he had bought the property and placed it in the name of the Church to avoid paying taxes; that later and after the present controversy arose he received a letter from T. Wesley Hill (which he introduced in evidence) stating that complainant could gain nothing by bringing suit because he had long since placed his property beyond the reach of creditors.

The Chancellor held this testimony admissible against Hill but not against the Church.

Complainant also relies upon the testimony of Hill and the Trustees of the Church that the language of the deed to Hill, Trustee, above quoted was designed to prevent Hill from being suddenly evicted in event a new pastor should be elected by the congregation. It is said the broad language of the deed and the explanation offered show that Hill had a beneficial interest in the property.

We do not think so. It is true that Hill could for a time prevent eviction but only by a perversion of his function as trustee. There can be no doubt, however, that if he persisted in refusing to vacate the premises the Church could have relief in equity on the ground of a breach of trust or that in event of sale Hill, Trustee, would be required to account. This provision is not surprising in view of the complete domination of the Church by Hill, often for his own convenience and benefit, as will appear. A benefit which can be enjoyed only by a breach of duty as trustee is not such an interest as can be the subject of a fraudulent conveyance to defeat credi-

tors. See Marsh v. Galbraith, 31 Tenn. App. 482, 216 S. W. (2d) 968.

In view of all the circumstances and especially the absence of any showing that the debtor's funds went into the property, the affirmative showing that funds of the Church did and the proof to which we have referred as to the original intention to purchase it for the Church we think the Chancellor was correct in sustaining the plea in abatement.

It is insisted the Chancellor erred in not holding the conveyance of the property to T. Wesley Hill, Trustee, void for uncertainty in the purposes of the trust. We are not cited to any authority holding that the trust instrument itself must delineate the purposes for which a church will use property conveyed to a trustee for its use and benefit and none has come to our attention. The argument overlooks Code Section 4407 empowering religious societies to hold not exceeding 5 acres "for purposes of public worship or for a parsonage" as construed and applied in Sales v. Southern Trust Co., 182 Tenn. 270, 185 S. W. (2d) 623, which see. It is our view that complainant has no right under the circumstances of this case to question the fact that the trustee was not selected by the membership as provided by Code Section 4408.

This is not a case like Citizens' Nat. Bank v. Watkins, 126 Tenn. 453, 150 S. W. 96, strongly urged upon us by complainant, where the debtor created a trust for his own benefit out of his own means. The distinction lies in the fact that here the funds going into the trust came from a third party while there the funds came from the beneficiary of the trust and the necessary effect was to defeat future creditors in the collection of their debts against the trustor.

Before considering the questions of undisclosed agency and partnership raised by the amended bill it is necessary to develop the facts in some detail.

Prior to June, 1946, the Church under the guidance of T. Wesley Hill had been trading extensively in real estate, ostensibly in connection with obtaining a Church site, but actually in buying and subdividing suburban tracts, buying timber and a saw mill and planer and erecting houses on some of the lots. The title to all of this property was in the Church trustees. Complainant, a resident of New Jersey, in June, 1946, became interested in joining T. Wesley Hill, his brother, in these operations, apparently believing his brother's representations that he owned the properties and saw mill in his own right. He began to make advancements from his home in New Jersey from time to time and finally, in September, 1946, obtained a furlough from his employer so that he could come to Tennessee to devote his full time to these enterprises. After his advancements had totaled more than $8,000 and on September 25, 1946, a formal written contract of partnership was entered into between complainant and T. Wesley Hill providing, among other things, for a division of profits between them.

Less than a month later T. Wesley Hill gave notice of termination and gave complainant his personal notes aggregating $10,000 for his interest in the partnership. The Church was not a party to the contract and knew nothing of its pastor's transactions with complainant. T. Wesley Hill testified that he deposited all of the money received from complainant in his own account and that the Church did not get the benefit of more than $1,500 out of the total advanced by complainant. His testimony on that point is unverified but there is no proof to the contrary. (Complainant later collected $1,500 by filing a

lien claim against the property of the Church for lumber from the saw mill.) Complainant testified that he knew T. Wesley Hill was "interested in the Church" but his dealings were with him personally and that he, complainant, did not want to have any dealings with the Church. As above indicated, he knew that the Boulevard property was in the name of the Church though, according to his testimony, only to avoid payment of taxes.

■ None of the assignments is specifically directed to the failure of the Chancellor to find a partnership relation between the Church and T. Wesley Hill though it is mentioned in the supporting brief. We do not believe it can be seriously contended that this holding was error. So far as appears the Church knew nothing of Hill's intention to take a share of the profits or to deal with its property otherwise than as its salaried and trusted agent. There is lacking the elements necessary to the partnership relation and we find it unnecessary to deal at length with that question.

■■ It does appear, however, that the Church fully authorized and empowered Hill to buy and sell property and timber, subdivide and sell lots and build and sell houses. When a church body so engages in business enterprises it is subject to the same liabilities as others similarly engaged. We think its status was clearly that of an undisclosed principal. The proof throughout the trial showed without question that the Church approved and ratified these operations by its pastor. In fact, its counsel practically admitted as much in open court.

Complainant, however, was fraudulently induced by the representative in charge of its operations to believe that the agent was dealing in his own right. It is not shown that he learned the true relationship until it was developed in proof and two questions seem to us to con-

trol the liability of the Church: (1) Was there an election to look to the agent alone (a) by accepting the notes of the agent and (b) by suing both the principal and agent and, if not, (2) Was the agent's fraudulent act, the formation of the partnership between complainant and T. Wesley Hill and the subsequent settlement between them within the real or ostensible powers of the agent?

■■ (1) Phillips v. Rooker, 134 Tenn. 457, 184 S. W. 12, 14, dealt with an election in a suit against an agent and a *disclosed* principal. We quote from the opinion:

"As has been noted, either the principal or the agent is to be held liable, but not both. It is the duty of the creditor to elect which of the two he will compel to carry out the contract negotiated by the agent, and if, with full knowledge, he elects to hold the agent, he thereby discharges the liability of the principal, and conversely. Tuthill v. Wilson, 90 N. Y. 423; Murphy v. Hutchinson, 93 Misc. 643, 48 So. 178, 21 L. R. A., N. S. 785, and note, 17 Ann. Cas. 611; 31 Cyc., 1578. . . .

"The duty to elect implies, as a prerequisite, knowledge, or its equivalent, on the part of the creditor of the facts material to his right . . ." And see also Brummitt Tire Co. v. Sinclair Refining Co., 18 Tenn. App. 270, 75 S. W. (2d) 1022.

■■ When the notes were accepted complainant, so far as appears, still did not know the identity of the undisclosed principal and there was no election by accepting the notes to relieve it of any liability for acts of its agent.

A more difficult question arises as to whether there was an election growing out of the present suit.

■■ While in Phillips v. Rooker, supra, a disclosed agency was involved it can be soundly reasoned that the same duty of election exists in cases involving undisclosed agency after discovery of the identity of the

undisclosed principal in time to afford an intelligent choice. For discussion of the analogy see page 463 of 134 Tenn., page 13 of 184 S. W. of the opinion in the Phillips case, supra.

The general rule as to whether the taking of a judgment constitutes an election was clearly enunciated by Justice Williams in that case:

" . . . (C)learly, when both the principal and the agent are sued together, as in this case, and a full view of the premises afforded, and the creditor then takes a judgment against the agent, that is a decisive act of election and his case against the principal for later judgment in the same [case] or in a subsequent suit must fail." (Citing cases.)

Under the general rule the decisive question is the knowledge of the complainant at the date of rendition of judgment against the agent, Pittsburgh Terminal Corp. v. Bennett, 3 Cir., 73 F. (2d) 387; Kingsley v. Davis, 104 Mass. 178; Sessions v. Block, 40 Mo. App. 569, and, generally, having obtained judgment against the agent with knowledge of the identity of the undisclosed principal no judgment can be subsequently rendered against the principal even though the first judgment remains unsatisfied. Phillips v. Rooker, supra, and cases cited.

In this case, there was a clear showing of agency early in the trial followed by a virtual admission of agency by counsel for the undisclosed principal. It appears, therefore, that unless relieved by the fraud of the agent, complainant, under the authorities, must be held to an election by taking judgment against the agent. He comes to this court with an outstanding judgment against the agent including attorney's fees provided for in the notes upon which he sues.

■ The rule of election was founded upon the reasoning that if an action were brought and judgment recovered against the agent he, the agent, would have an actionable right of indemnity or recoupment against the principal, thus vexing the principal with a double action. Sessions v. Block, 40 Mo. App. 569, 572, approves this reasoning as sound.

Manifestly, since the agent could not maintain an action against the principal growing out of his own wilful fraud, the principal, in such a case, would not be affected by a judgment against the agent. Maple v. Cincinnati, etc., R. Co., 40 Ohio State, 313, 48 Am. Dec. 685. The reason for the rule failing the rule should not be applied in such a case.

■ That we have such a case here is clear and we hold that there has been no election binding complainant not to prosecute his suit against the principal.

■ (2) We are of opinion, however, the acts of the agent upon which the suit is predicated were not within the real or apparent scope of the agency.

■ While T. Wesley Hill's authority to conduct the business of the Church in buying and developing its property was extremely broad, this gave him no right, either real or apparent, to enter into a partnership arrangement with complainant. To the extent the partnership was for the personal benefit of Hill, his action in forming it was a breach of his trust and a repudiation of his principal's title. But, even if intended to benefit the Church, it was wholly beyond his powers as agent. The power to represent another in business operations cannot reasonably be taken to include the power to make a third party a partner of the principal without the principal's knowledge or consent. Guy v. Rosewater, 18 Colo. App.

1, 69 P. 271; Wright v. Boynton, 37 N. H. 9, 72 Am. Dec. 319; 2 C. J. S., Agency, Sec. 103, page 1243.

In the absence of a retention of benefits with knowledge of the fraud the principal can be held for the agent's fraud only if perpetrated while acting within the course and scope of the agent's authority. It is not sufficient to impose liability upon the principal that the principal might have benefited by the agent's wrongful and unauthorized act. 2 Am. Jur. 283, Agency, Section 364.

As indicated above, the Chancellor found it impossible to determine how much, if any, of complainant's advancements went into the Church treasury. With this finding we agree. If we accept the statement of T. Wesley Hill that about $1,500 went to the Church the amount has been recovered by complainant under his lien claims. There is no showing that even that sum was retained by the Church for any period of time with knowledge of the fraud. The mere receipt and retention of that sum for a time without knowledge of its source would not constitute a ratification of a fraud of which the Church was ignorant.

Though we base our conclusions upon somewhat different grounds, we find no error and the decree is affirmed with costs.

Hale, J., and William Brown, Special Judge, concur.