**WESCON, INC., Kenneth P. Whaley, d/b/a Whaley Construction Company and Parks Electric Service, Incorporated, Plaintiffs-Appellees,**

v.

**Ron MORGAN, Harlan Newton and Robert N. Hatfield, Defendants-Appellants.**

Court of Appeals of Tennessee, Eastern Section.

Aug. 9, 1985.

Permission to Appeal Denied by Supreme Court Oct. 28, 1985.

L. Anderson Galyon, III and Brian H. Trammell of Kennerly, Montgomery & Finley, Knoxville, for defendants-appellants.

R.N. Child and George Worman, Jr., Knoxville, for plaintiffs-appellees.

## OPINION

FRANKS, Judge.

In this action, the trial court entered judgment against the three individual defendants for improvements plaintiffs made on a camp site in Knox County. Defendants have appealed.

Essentially, the facts as found by the chancellor are not in dispute except as they relate to Robert Hatfield, hereinafter discussed.

From our review, we conclude the evidence does not preponderate against the chancellor's findings of fact pertinent to the issues, which we adopt:

The three plaintiffs, namely Wescon, Whaley and Parks, seek a judgment against Messrs. Morgan, Newton and Hatfield, and Hatfield, Inc., for improvements made to certain real property, and prejudgment interest. . . .

.    .    .    .    .

At the request of Mr. Morgan, Parks had done maintenance work on King's Plaza Shopping Center in the past, prior to the times involved in this case, for Ackerman and Company which maintained the shopping center.

In December, 1981, or January, 1982, Mr. Morgan approached Mr. Parks in regard to improvements to the real property owned by Associates for a World's Fair campsite. On that occasion Mr. Parks recommended that Mr. Morgan contact J.M. Widner, a civil engineer.

Mr. Morgan later contacted Mr. Widner by phone, and Mr. Widner met at Mr. Widner's office with Mr. Morgan and Mr. Newton on or about February 17 or 18, 1982. Mr. Widner was employed to prepare field plans for a recreational vehicle park on Associates' real property. At this time, Mr. Widner thought that Messrs. Morgan and Newton were partners, and was advised that other partners were involved, namely Mr. Hatfield and a Mr. Bob Peters from Florida.

.    .    .    .    .

At some point in time, Mr. Widner was asked by Messrs. Morgan and Newton to secure bid proposals for the work to be done.

Mr. Widner contacted the three (3) plaintiffs, and from information submitted by them prepared bid proposals, . . .

.    .    .    .    .

On March 13, 1982, Mr. Widner went to Atlanta, Georgia, where he met with Mr. Morgan and submitted to him the

three (3) bid proposals of the plaintiffs, which had been signed by the plaintiffs.

. . . . .

On March 16, 1982, Messrs. Morgan and Newton met with Mr. Widner at his office. Mr. H. Wesley Peters of Wescon was also present. On that occasion, Mr. Morgan okayed or accepted the plaintiffs' bid proposals by signing as an individual each one. There is no mention on the approved bid proposals of a corporation.

Mr. Morgan instructed Mr. Widner to notify the plaintiffs of the bid proposal acceptance. At this time, Mr. Widner was paid $2092.00, the balance of his charges, by check drawn on the account of Five Mile Camp Sites, Inc., which account had been opened that same day. Mr. Widner in turn wrote a receipt to Five Mile Camp Sites, Inc.

. . . . .

On March 16, 1982, Five Mile Camp Sites, Inc., was incorporated under the laws of the State of Georgia, "To own, lease, acquire, maintain and operate recreational vehicle campsites wherever located; to do all things incidental to operation such campsites ..." It remains a viable corporation in the State of Georgia, but has never been domesticated as a foreign corporation in the State of Tennessee.

Mr. Widner was employed to layout lots, act as supervisor and inspector, and generally look after the project. He was directed to obtain a building permit in the name of Mr. Morgan, and to show the name on the drawing or plat as Five Mile Recreational Vehicle Park. The property was five (5) miles from the World's Fair site.

Mr. Widner never told the plaintiffs that they were working for a corporation and was never instructed to do so. Instead, in the beginning, he advised that Messrs. Morgan, Newton and Hatfield were partners.

. . . . .

The first time Mr. Hatfield met with Mr. Widner was on April 27, 1982, and he never came into contact with the plaintiffs until after May 1, 1982. However, Mr. Hatfield was the president and member of the board of Five Mile Camp Sites, Inc., and Messrs. Morgan and Newton were also officers or directors.

Mr. Morgan was on the job site on a monthly basis. When he received Parks' proposal on March 19, 1982, it did not have corporation shown thereon. Mr. Morgan basically states that he does not remember telling Parks or Whaley that there was a partnership. He denies being in partnership with Messrs. Newton and Hatfield, although ... a computer printout pertaining to reservations shows Messrs. Morgan and Newton as owner. Mr. Morgan admits failing to tell the plaintiffs the corporate mailing address.

Mr. Newton was involved with Mr. Morgan from the beginning. Mr. Hatfield later got involved as an investor. Mr. Newton testified that the corporation was formed to limit their individual liability in case of failure. He was the on-site manager for approximately six (6) weeks or until the project was abandoned in June or July, 1982.

. . . .

The preponderance of the evidence indicates that it was never disclosed to any of the plaintiffs that the individual defendants were acting on behalf of the Georgia Corporation, until they received the checks dated April 27, 1982, written on the corporate bank account and given to Mr. Widner for delivery. That was more than a month after the contract was signed by Mr. Morgan, and the plaintiffs' work at this time was substantially completed.

On the basis of the foregoing, the chancellor invoked the familiar rule that a party dealing with the agents of an undisclosed principal may elect to hold the agents personally liable on the contracts entered, citing *Sparkman v. Phillips*, 51 Tenn.App. 645, 371 S.W.2d 162 (1962); *Hill v. Hill*, 34 Tenn.App. 617, 241 S.W.2d 865 (1951). The

chancellor concluded that Morgan and Newton were personally liable on the contracts under this theory and neither Hatfield nor Hatfield, Incorporated was liable under this theory "because the preponderance of the evidence indicates that neither dealt with the plaintiffs until they received the checks drawn on the corporation dated April 27, 1982, or until after May 1, 1982."

■ The chancellor then concluded all three defendants were responsible for paying for the improvements under, what he described as, the "second theory" of the plaintiffs and described the applicable rule as being stockholders or officers of a foreign corporation who undertake to carry on business within Tennessee without complying with its laws for domestication are held liable as partners, relying principally upon *Cunnyngham v. Shelby*, 136 Tenn. 176, 188 S.W. 1147 (1916).

The rule applicable to the facts of this case is well stated in 3A *Fletcher Cyclopedia on Corporations*, § 1120, p. 183:

> The rule that where an agent enters into a contract in his own name for an undisclosed principal, the other party to the contract may hold the agent personally liable, applies equally well to corporate officers or agents. The corporate principal's status as disclosed, undisclosed or partially disclosed is ordinarily determined at the time of contracting. It has been held that the managing officer of a corporation, even though acting for the company, becomes liable as a principal where he deals with one ignorant of the company's existence and of his relation to it, and fails to inform the latter of the facts. If an officer or agent of a corporation enters into a contract without disclosing the fact that he is acting for the corporation, or otherwise than individually, the other party may, at his election, either hold the corporation on the contract, or hold the officer personally liable, but he cannot hold both, and parol evidence may be invoked to hold a corporation upon a contract entered into by its president or manager in his own name, if it was intended for and inured to

the benefit of the corporation, and there is anything on the face of the instrument suggesting that it was made for an undisclosed principal.

*Accord: McCluskey Commissary, Inc. v. Sullivan,* 96 Idaho 91, 524 P.2d 1063 (1974).

The trial court's reliance on *Cunnyngham, supra,* is misplaced. *Cunnyngham's* rationale is that since the foreign corporation had not complied with Tennessee laws, the corporation was without the power of contracting and the officers, by entering agreements, bound themselves and not the corporation. 136 Tenn., at 181, 188 S.W. 1147. Since the *Cunnyngham* decision, the Tennessee General Corporation Act has been enacted, which expressly permits foreign corporations to carry on certain activities within the state without procuring a certificate of authority, T.C.A., § 48–1–1101, and T.C.A., § 48–1–1106(b), which provides:

> The failure of a foreign corporation to obtain a certificate of authority shall not impair the validity of any contract or act of such corporation and shall not prevent such corporation from defending any action, suit or proceeding in any court of this state.

These statutory provisions remove the reason for the rule invoked in *Cunnyngham.*

■ We affirm the chancellor's judgment as to Morgan and Newton on the basis that as agents they entered the contracts with plaintiffs for an undisclosed principal. We reverse the trial court's judgment as to defendant Hatfield, since neither the pleadings nor the facts support the judgment as the contracts were not made by him.

Plaintiffs argue Hatfield's conduct indicated he "assented to or permitted his agents, Messrs. Newton, Morgan and/or Widner, to represent to plaintiffs the form of the business entity." The trial court determined that Hatfield was not liable on the principles of agency. The evidence as heretofore noted does not preponderate against this determination. T.R.A.P., Rule 13(d).

Accordingly, we affirm the judgments as entered in the trial court against Newton and Morgan, and vacate the judgment and dismiss the action as to defendant Hatfield.

The cause is remanded to the trial court with the cost of appeal assessed to appellants Newton and Morgan.

PARROTT, P.J., and LEWIS, J., concur.