# NASHVILLE TRUST CO. v. JOHNSON et al.—
## 236 S. W. (2d) 100.

Middle Section.   July 28, 1950.

Petition for Certiorari denied by Supreme Court, Jan. 13, 1951.

Murray & Elledge, of Nashville, for Nashville Trust Co., Adm'r.

E. J. Walsh, of Nashville, for John and Columbus Fite.

Z. Alexander Looby, of Nashville, for Maggie L. Johnson.

Hofstetter and Hofstetter, of Nashville, for William L. Adrian, Bishop.

HICKERSON, J.   The bill was filed by Nashville Trust Company, administrator with the will annexed, to construe the will of Mary Fite Smith, deceased. The beneficiaries named in the will were made parties defendant; and, also, "William L. Adrian, Bishop of the Roman Catholic Diocese of Nashville, as Trustee for the Holy Family Church, a resident of Davidson County, Tennessee," was named a party defendant.

Two paper writings, taken together, had been declared by the circuit court of Davidson County to be the last will and testament of Mary Fite Smith in a will contest suit in that court. It is these two paper writings which the chancery court was asked to construe in this cause.

The paper writings to be construed are:

"September First Nineteen Fourtyfive
"September 1st 1945
"The National American Bank
   "Lock Box No. 667
   "Nashville Trust Co—
"My Last Will and Testament
"I am this day of my sound good mind and am not influenced by any one what soever by any one what soever:
"I do this day will to my sister and brother Maggie L. Johnson and to Samuel L. Fite of 4235 Parrie Avenue, Chicago, Ill.  All Personal Property furniture the home

farm at Henderedsonville Tennessee and etc eaqueal to Each Brother and sister.

"Maggie L. Buckner Johnson of 4235 Prairrie Ave Chicago Ill.

"The residue of my Estate shall be held in Trust by the American National Bank untill all debts are paid after which other estate shall be eaquealy sold and devide between two newphews John R. and Columbus Fite also of Chicago Ill.

"Mary Fite Smith
"119-18th Ave. No.
"Nashville Tennessee."

"September the First Nineteen Fourtyfive
"September 1st 1945.

"My Last Will and Testament:

"I do this day will to my sister and brother if living all my personal property household furniture and etc to be eaquealy devide to each of them My Sister Maggie L. Johnson and Brother Samuel L. Fite of 4235 Parrie Ave Chicago, Ill. The resuedue of my Estate which shall be held in Trust by the American National Bank shall be sold by Said American National Bank and after all debts are paid shall be Eaquealy devided as follows:

"Between two nephews John and Coulumbus Fite also of Chicago Ill.

"To Hobart Wharton's a third nephew I will to his daughter Theome Wharton all Jewelry watch two dimond rings which would have been the amount willed to Hobart Wharton a Newphew.

"All money shares shall go to pay funeral expenses.

"To the Holy Familey Church I will Five Hundred Dollars and      no                                   500.00

and all money if any in Bank after all debts have been paid. This day I am possessed of a happy good will and a sound frame of mind and have not been Influenced by any one at home alone as useal.

"Mary Fite Smith "Lock Box No 667 Nashville Trust Co."

The paper first quoted was written with ink; the other was written with pencil.

The Chancellor decreed:

"And upon consideration of the entire record, as thus amended, the Court is pleased to find that the action of the complainant in filing this suit asking for a construction of the Last Will and Testament of Mary Fite Smith deceased, was right and proper; that the two paper writings exhibited as having been probated by the County Court of Davidson County, Tennessee as the Last Will and Testament of Mary Fite Smith are not void for indefiniteness as contended in the answer of defendants Maggie L. Johnson and Samuel L. Fite and in the answer of John R. Fite and Columbus Fite (as amended), but do constitute the valid Last Will and Testament of said Mary Fite Smith deceased.

"The Court further finds that the proper construction of the terms and provisions of said Last Will and Testament of said Mary Fite Smith deceased shows it to dispose of her entire estate as follows:

"1. A specific bequest to defendants Maggie L. Johnson and Samuel L. Fite of her household furnishings and other tangible personal effects (other than her watch and two diamond rings);

"2. A specific devise to said Maggie L. Johnson and Samuel L. Fite of the parcel of real estate located at Hendersonville, Tennessee;

"3. A specific bequest to Theome Wharton of the jewelry, consisting of a watch and two diamond rings;

"4. A specific bequest to the Holy Family Church, a Roman Catholic Church located on Seventh Avenue, South in Nashville, Tennessee, of $8,088.62, being the balance to the credit of the testatrix at her death, in the American National Bank of Nashville, Tennessee. This bequest however, is subject to being charged with any part of the debts of the testatrix, if any, which may remain unpaid in the event the residuary estate is exhausted before all debts have been paid;

"5. A general bequest to said Holy Family Church of the sum of $500.00;

"6. A direction to the Administrator with the will annexed to apply the proceeds from the sale of the 120 shares of Dividend Shares, Inc. (described in the will as 'money shares') to the payment of the funeral expenses of testatrix;

"7. The residue of the personalty, if any, and the two tracts of real estate, located on Patterson Street and Nineteenth Avenue North, in Nashville, Tennessee, to be converted into cash; and after the payment of administration expenses, any balance of the funeral expenses remaining unpaid after application of the proceeds from the sale of the shares in Dividend Shares, Inc. and payment of the $500.00 general bequest to the said Holy Family Church, the remainder to be equally divided between defendants John R. Fite and Columbus Fite."

Maggie L. Johnson, John R. Fite, and Columbus Fite have appealed to this court. The assignments present three determinative questions:

(1) Was the will of Mary Fite Smith void because its provisions were vague, indefinite, and conflicting?

(2) . Was the gift to the Holy. Family Church. void, in whole or in part?

(3) Did Mary Fite Smith intend to give the church the money in bank at the time of her death which she acquired through the sale of a house and lot on October 24, 1945?

There is no dispute about the material facts. Mary Fite Smith was a Negro woman who had lived most of her life in Nashville, Tennessee. She was sixty-nine years old when she executed her will. She was an industrious, frugal woman. She had no children. Her nearest relatives were her sister, Maggie L. Johnson, her brother, Samuel L. Fite and her two nephews, John R. Fite and Columbus Fite.

Mary Fite Smith was a devout member of the Roman Catholic Church, being a member of the Holy Family Church, a local church in Nashville, Tennessee, of the Roman Catholic faith.

Realty which is owned by the Roman Catholic Church stands in the name of the bishop of the church, he being the person who handles the church property under its rules and regulations. Defendant, William L. Adrian, is the Bishop of the Roman Catholic Diocese of Nashville, and the Holy Family Church is under his jurisdiction and authority. The Roman Catholic Church is not incorporated, and the local church known as the Holy Family Church is not incorporated.

At the time testatrix executed her will, September 1, 1945, she had four pieces of real estate: (1) the home farm near Hendersonville, Tennessee;. (2) one house and lot in Nashville, Tennessee, at Eighteenth Avenue and Church Street; and (3) two houses and lots in Nashville, Tennessee, on Nineteenth Avenue at Patterson Street.

On October 24, 1945, testatrix sold the house and lot at Eighteenth Avenue and Church Street for $10,000. Testatrix had carried a savings account in the American National Bank for several years. On September 1, 1945, the day she executed her will, this account was $160.15. On the day she sold her house and lot at Eighteenth Avenue and Church Street testatrix deposited into this savings account $9,200.14 which she acquired through the sale of the house and lot, making a total deposit on that day, October 24, 1945, in the savings account of $9,222.56.

On February 1, 1946, testatrix opened a checking account in the American National Bank by a deposit of $1,000 which she took from her savings account in that bank. On May 11, 1946, she deposited $115 to this checking account. By February 3, 1947, this checking account had been reduced to fifty cents; and the account was closed by the bank on February 3, 1947, by a service charge.

Mary Fite Smith died on April 6, 1947, with only one bank account, the savings account in American National Bank, which had $8,088.62 in it.

■■ 1. For reasons hereafter stated, we do not think the will of Mary Fite Smith is void for uncertainty of meaning. A will should be construed so as to sustain it, if reasonably possible. Sales v. Southern Trust Co., 182 Tenn. 270, 185 S. W. (2d) 623.

The construction which we shall give to the will sustains it and gives to the beneficiaries the devise or bequest which testatrix intended for each beneficiary to take.

2. Was the bequest to the Holy Family Church void in whole or in part?

Appellants contend the bequest to the church is void because (a) the unicorporated church cannot take the bequest for want of capacity; (b) the bequest was not made to trustees; and (c) the bequest was not definite in its purposes.

In Green v. Allen, 24 Tenn. 170, this rule is stated: "If the charity be created, either by devise or deed, it must be in favor of a person having sufficient capacity to take as devisee or donee, or, if it be to not such person, it must be definite in its object, and lawful in its creation, and to be executed and regulated by trustees, before the court of chancery can, by virtue of its extraordinary jurisdiction, interfere in its execution."

This rule was followed by our Supreme Court in many cases, including the following: Daniel v. Fain, 73 Tenn. 319; Reeves v. Reeves, 73 Tenn. 644; Rhodes v. Rhodes, 88 Tenn. 637, 13 S. W. 590; Ewell v. Sneed, 136 Tenn. 602, 191 S. W. 131, 5 A. L. R. 303.

Code Section 9593 provides: "Trusts not to fail for want of trustee.—No trust, having for its object the aid of the poor, or the promotion of religion, morality or education, shall fail because of an attempt to create a perpetuity in same or lack of a trustee."

Under this statute, which was enacted subsequent to the foregoing decisions, a charitable trust would not be held invalid because no trustee was named. The chancery court will appoint a trustee to administer the trust.

The Code of Tennessee provides:

Code Section 4407. "Religious society; power to take and hold land.—Any religious denomination or society, whether incorporated or not, may take, by deed or otherwise, and hold not exceeding five acres of land at one place for purposes of public worship or for a parsonage, and five acres for burial ground."

Code Section 4408. ''Title vested in trustees.—All lands bought or otherwise acquired by any religious denomination or society, shall be vested in a board of trustees or other persons designated by the members of such denomination or society, for the use and benefit thereof.''

Code Section 4409. ''When trustees may sell. In all cases where any elders, trustees, or other church officers, in any of the churches or organizations of any religious denomination, shall have any lands conveyed to them for the use of their respective churches or congregations as building sites, or for any other purpose, by deed, grant, devise, or in any other manner, they or their successors in office, according to the regulations of such church or congregation, may sell and convey the same by deed, which deed, when officially signed by such elders, trustees, or other church officers, or their successors in office, shall pass the title, whether for life, for years, or in fee, to such land to the purchaser in as full and ample a manner as if said officers held the same as a corporation, and had conveyed it by deed under the corporate name.''

These code sections were construed by our Supreme Court in Sales v. Southern Trust Company, 182 Tenn. 270, 185 S. W. (2d) 623, 624. The Court held:

(a) ''It cannot be doubted that he intended to make an outright gift to the church. No trust, charitable or otherwise, is attempted. Upon the death of Mrs. Gibbs the trust in her behalf terminated, the remainder interest being then due and payable to the trustees of the church. Much of the argument relating to charitable trusts and the authorities on that branch of the law to which our attention has been called are without application.''

(b) ''It is now well settled that an unincorporated church organization occupies a corporate status as to

its acquisition, ownership, improvements, contracts, and dealings concerning the property owned and used by it for public worship, parsonage, and burial ground purposes.''

(c) ''By a line of the decisions of this Court it has been held that these statutes confer a legal existence and entity upon unincorporated religious associations, making of them quasi-corporations with limited capacity and powers. Reeves v. Reeves, 73 Tenn. 644; Rhodes v. Rhodes, 88 Tenn. 637, 13 S. W. 590: Wilson v. Clinton Chapel African M. E. Zion Church, 138 Tenn. 398, 198 S. W. 244, and others.''

The Court quoted with approval from Rhodes v. Rhodes, 88 Tenn. 637, 13 S. W. 590, wherein the Court said:

(d) '' 'The capacity to take and hold real estate conferred by the sections of the Code quoted, operates to confer upon such a voluntary religious society the corporate right of existing as a legal entity for the purpose of holding and conveying, as defined in the statute; and a devise of land for a church-site, to be conveyed when a church building should be erected thereon, has been sustained as valid. Reeves v. Reeves, 73 Tenn. 644.' ''

(e) ''The legal capacity of a corporation to take and hold such property as is necessary to enable it to accomplish the purposes for which it was created is ascribed to every corporation regardless of expressed statutory sanction. 19 C. J. S., Corporations, sec. 1088, p. 627; 13 Am. Jur., Corporations, Sec. 773, p. 801.''

(f) ''So we think these quasi-corporations have authority to take such property as is necessary to the exercise of the functions granted to them by the law.''

(g) "The taking of money for such purposes is but a temporary holding of property. These quasi-corporations are not authorized either expressly or by implication to hold personal property permanently, nor are they authorized to hold real estate further than the statute prescribes. Being authorized, however, to take real estate for purposes for which the realty cannot be fitted without the use of money, they are authorized to take money to effectuate such ends."

(h) "When an unqualified gift is made to any corporation it is contemplated that the gift will be applied to purposes for which the corporation was organized. Indeed, such gift could not properly be applied to any other purposes. So when a gift of personalty is made to one of these quasi-corporations, it is likewise contemplated that it will be used for purposes for which such an organization is authorized to take and use the gift. In the case before us the First Baptist Church of Clarksville has a church house and a parsonage. For the reasons stated, we think it may take this gift of testator's money, not to be invested nor held, but to be expended for repairs, equipment, or enlargement of its church house or parsonage."

In Sales v. Southern Trust Company supra, the Supreme Court extended the rule relating to charitable bequests beyond any former holding in three particulars: (1) outright gifts were distinguished from trusts; (2) it was held that unincorporated religious bodies could take gifts of personalty and use same to improve and maintain realty which such quasi-corporations could hold under our statutes; and (3) the court would presume that a gift of personalty would be used by such quasi-corporations for the purposes for which such corporations were authorized to take and use the gift.

█ We are definitely of the opinion that the Holy Family Church could take the outright gift which Mary Fite Smith intended the church to take under her will, and that Bishop Adrian is a proper person under the church organization to receive and apply the gift for the benefit of the Holy Family Church and for purposes for which this church was authorized to take and use the gift.

3. Did the testatrix intend to give the Holy Family Church the money in bank at the time of her death which she acquired through the sale of the realty on October 24, 1945?

Code Section 8133 provides: "Operation of will.—A will shall be construed, in reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator; and shall convey all the real estate belonging to him, or in which he had any interest at his decease, unless a contrary intention appear by its words and context."

Under this statute a will must speak and take effect, "as if it had been executed immediately before the death of the testator * * * unless a contrary intention appear by its words and context."

█ To ascertain the intention of the testator, however, it is necessary to consider the facts and surrounding circumstances at the time the will was executed.

In Rodgers v. Rodgers, 53 Tenn. 489, the Court said: "The result of all the authorities may be stated to be, that notwithstanding all the nice distinctions which have been taken by the courts on the subject, we must come at last to the plain common sense question, what was the

intention of the testator, as indicated by his language, viewed in the light of surrounding circumstances.''

In Nashville Trust Co. v. Grimes, 179 Tenn. 567, 167 S. W. (2d) 994, 995, our Supreme Court construed Code Section 8133. In the Grimes case, the testator devised, ''My property on the Dickerson Road near Nashville, Tennessee, to my grandnephew, Gilbert Lowe.'' When the will was executed Mr. Grimes only owned one hundred twenty acres of land on Dickerson Road; but subsequent to its execution he acquired one hundred seven more acres of land on Dickerson Road, and he owned the two tracts of land at his death.

The chancellor held that Gilbert Lowe took only the one hundred twenty acres under the will. Affirming that decree, the Supreme Court said: ''The Chancellor looked to the language of the will, in the light of all the relative facts existing at the time of its execution, and the changes which took place before the death of the testator in his personal relations and the investment of his estate, and found that the intention of the testator was plain; that the property passing to Gilbert Lowe was that and that only definitely designated in the will; that the testator could not possibly have intended when he made this will to include in the description 'My property on the Dickerson Road' property which he did not then own, and could not have foreseen subsequent ownership. We think the Chancellor properly followed the rule that for the purpose of construction of the language describing property devised, the will must be considered as of the time of its execution. As was well said by Chancellor Cooper (Johnson v. Johnson, 1 Tenn. Ch. 621): 'The plainest dictate of common sense would be, it seems to me, to seek the subject-matter of devise, and the object of benefit

at the date of the will. And so are the authorities.' So, in 28 R. C. L., Sec. 196, it is said: 'But for purposes of construction a will must be considered in reference to the circumstances which existed at the time of its execution.' "

And also: "Viewing this will as a whole and in the light of all the circumstances surrounding its making, we think there can be no doubt that it was the intention of the testator to devise to this grandnephew this property, consisting of 120 acres, on Dickerson Road, and that only."

The cardinal rule of construction of wills is to ascertain the intention of the testator and give effect thereto, if possible. All rules of construction are only aids or helps in ascertaining such intention. Hoggatt v. Clopton, 142 Tenn. 184, 217 S. W. 657; East & Collins v. Burns, 104 Tenn. 169, 56 S. W. 830.

Applying these rules to the will in question, we have this situation:

(1) Testatrix specifically disposed of all her personal property.

(2) Specifically devised her "home farm at Hendersonville, Tennessee."

(3) She made a specific bequest of $500 to the Holy Family Church.

(4) The paper writing in ink provided: "The residue of my Estate shall be held in Trust by the American National Bank until all debts are paid after which other estate shall be eaquealy sold and devide between two newphews John R. and Columbus Fite also of Chicago, Ill."

The paper writing in pencil provided: "The resuedue of my Estate which shall be held in Trust by the American

National Bank shall be sold by Said American National Bank and after all debts are paid shall be eaquealy devided as follows: Between two nephews John and Coulumbus Fite also of Chicago Ill.''

(5) After the specific bequests, the ''residue'' of the estate of testatrix, at the time the will was executed, was: (a) the house and lot on Eighteenth Avenue and Church Street; and (b) two houses and lots on Nineteenth Avenue at Patterson Street.

It clearly appears that testatrix had no idea of selling this part of the ''residue'' of her estate at the time she executed her will on September 1, 1945. So, she devised this ''residue,'' subject to her debts, as effectively to John R. Fite and Columbus Fite, her nephews, under her residuary clause, as if she had specifically named the three pieces of realty; for these three pieces of realty were all she had left after she had specifically disposed of the rest of her property real and personal in her will.

But testatrix sold the house and lot on Church Street, as stated, about two months after the execution of her will and deposited the proceeds of the sale in her savings account in the American National Bank. When she deposited the proceeds from the sale of her house and lot in this savings account, she had only $22.42 in the account.

Thereafter she drew $1,000 from her savings account and deposited it in the American National Bank in a checking account and used the funds from this checking account until her death. The entire fund in the checking account was used by her before her death. When she died she had $8,088.62 in her savings account, and this entire sum was acquired by her through the sale of the house and lot.

Now, did testatrix intend to give the Holy Family Church the specific bequest of $500, and, also, this $8,088.62 under that provision of her will which stated that the church should have, "all money if any in bank after all debts have been paid"? The chancellor held she did. With that construction we cannot agree.

The special bequest of $500 was the main, principal sum which testatrix intended to give the church. We cannot reach the conclusion that she intended to give the specific bequest of $500 to the church; and then intended to give more than fifteen times that amount in addition to the $500 under the words. "and all money in bank if any." It was her intention that a small nominal sum might be left in bank which she had not disposed of, and she wanted that sum to go to the church, "if any."

█ Testatrix had made and acquired her money the hard way, as a laundress and seamstress; and to her, situated as she was, $10,000 was a fortune. Having taken a lifetime to acquire her estate, she would not be expected to spend it in the years she would normally be expected to live from her point of view. She left no money in bank at her death, except money acquired from the sale of her house and lot. We are definitely of the opinion that the Holy Family Church should receive the special bequest of $500 under the will of Mary Fite Smith, and no more, since there was no money in bank at the death of testatrix which she intended should go to the church under her will.

Wherefore, the decree of the chancery court will be modified so as to provide that John R. Fite and Columbus Fite shall receive the $8,088.62 in bank at the death of Mary Fite Smith in her savings account, subject to the debts and costs of administration of the estate; and in

all other respects the decree of the chancery court is affirmed.

Tax the costs incident to the appeal as follows: Nashville Trust Company, administrator, will pay one-third of such costs and charge same to that part of the estate which goes to John R. Fite and Columbus Fite; Nashville Trust Company, administrator, will pay one third of such costs and charge the same against the special bequest of $500 which goes to the Holy Family Church; and one-third of such costs will be taxed against Maggie L. Johnson and Z. Alexander Looby, the surety on her appeal bond.

The cost in the chancery court will stand as adjudged by that court. Remand the cause to the chancery court for further proceedings.

Howell, J., concurs.

Felts, J., not participating.