FIRST NATIONAL BANK OF MEMPHIS, Trustee under the Will of FRANK N. LEWIS, Deceased, et al., Complainants-Appellants, v. MRS. FRANK N. LEWIS et al., Defendants-Appellees. —441 S.W.2d 71.

Western Section. December 14, 1967.

Certiorari Denied May 6, 1968.

Thomas R. Price, Canada, Russell & Turner, James M. Manire, Chandler, Manire, Johnson & Chandler, Memphis, for appellants.

Walter P. Armstrong, Jr., Newton P. Allen, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, John Costen, Memphis, for appellees.

CARNEY, J. On October 13, 1967, this Court announced an opinion reversing the action of the lower court and remanding the cause. The appellees, Mrs. Frank N. Lewis and Walter P. Armstrong, Jr., guardian ad litem for DeWitt M. Shy, Jr., a minor, have filed a petition to rehear in which they have called our attention to two erroneous statements. On page 3 of our original opinion we erroneously stated that "If the widow be dead, the corpus under Trust B is to be distributed to Mary Page Lewis as follows: One-fourth when she reaches age twenty-one; one-third of the remainder when she reaches age twenty-five; one-half of the remainder when she reaches age thirty; and all of the remainder of the corpus when she reaches age thirty-five." We confused the provisions of the will providing for the

payment of the corpus of Trust B with the provisions of the will relating to the payment of the corpus of Trust A for the benefit of testator's stepson, DeWitt M. Shy, Jr. The statement is erroneous. We should have said, "After the death of the widow, Mrs. Frank Lewis, the corpus of Trust B is to be paid as follows: One-fourth to Mary Page Lewis when she reaches the age of twenty-five and one-third of the remainder when she reaches age thirty, making a total of fifty percent of the corpus to be paid to Mary Page Lewis. The income from the remainder, the other fifty percent of the corpus, is to be paid to Mary Page Lewis for the remainder of her life and on her death the remaining corpus is to be paid to her children in equal shares and if there be no children then it is to be paid to the testator's brother, T. Walker Lewis, Jr., if he be alive and if not, then in equal shares to his children."

Also at page 9 of our opinion we made the following erroneous statement: "The other one-half of his estate he wanted to go to his nearest blood kin, his teen-age daughter, ultimately in fee but charged with a portion of the annual support of his widow." We should have said, "The other one-half of his estate he wanted to go to his nearest blood kin, that is, his daughter, Mary Page Lewis, and her children, the testator's grandchildren, but charged with a portion of the annual support of his widow."

The petitioners insist that our misconception of the undisputed provisions of the will referred to above resulted in an erroneous conclusion as to the testator's dominant intention and that we should reverse our former holding and affirm the action of the Chancellor below. They further insist that this court's construction

of Item VI(n) favors the testator's natural child, Mary Page Lewis, to the prejudice of his stepson, DeWitt Shy, Jr. With these insistences we respectfully disagree. We have reviewed the will of the testator in the light of the corrections mentioned above. We think we reached the correct result in our former opinion.

The petition to rehear will be sustained and the erroneous statements in our former opinion are withdrawn and corrected as above set out. The decree heretofore entered of record in this cause reversing the decree of the lower court and remanding the cause will remain in full force and effect. In the interest of clarity our opinion of date October 13, 1967, in this cause is recalled. We substitute therefore as a part of this opinion sustaining the petition to rehear the following corrected opinion:

The First National Bank of Memphis, Tennessee, trustee under the will of Frank N. Lewis, deceased, and James M. Manire, guardian ad litem for Mary Page Lewis, Beverly Lewis, and Clayton Lewis who are beneficiaries under Trust B created under the will, have appealed from a decree of the Chancery Court construing the will of Mr. Lewis. The testator created two trusts: A and B. He made provision for encroachments in favor of his widow, Mrs. Florence Lewis, the appellee, in each trust. The widow has received encroachments totalling $14,250 of which $12,500 was charged by the trustee entirely against the corpus of Trust A and $1,725 was charged one-half to Trust A and one-half to Trust B. The corpus of each trust before encroachments was approximately $225,000. The net annual income from each trust is about $9,000.

After making the advances to the widow, Mrs. Lewis, at her request, First National Bank filed its original bill in

this cause making parties defendant all beneficiaries under the will, both vested and contingent, and prayed for a construction of the will. His Honor the Chancellor held that all encroachments upon the corpus of the trust estate either under A or under B in favor of the widow, Mrs. Frank N. Lewis, must be charged one-half against Trust A and one-half against Trust B under the express terms of the testator's will. The beneficiaries under Trust B were dissatisfied with the Chancellor's construction and have appealed. Only the portions of the will relating to encroachments are in controversy.

The will was executed November 28, 1961. The testator died January 26, 1962, and his will was admitted to probate in the Probate Court of Shelby County on February 2, 1962. Living in the household of the testator in Memphis, Tennessee, at the time of his death were the widow, Mrs. Florence Lewis, and her 13-year-old son by a former marriage, DeWitt M. Shy, Jr. The testator had a daughter by a former marriage, the appellant, Mary Page Lewis, also aged 13, who was living with her mother, Mrs. Patricia Adams Faill, in Wilmington, Delaware. The testator had no other children except Mary Page Lewis.

The will provides that the total net income from Trust A shall be paid over to the widow, Mrs. Florence Lewis, for her life and she is given the unlimited power of appointment by will at her death. If she fails to exercise the power of appointment, then the income and ultimately the corpus from Trust A is to be paid over to the stepson, DeWitt Shy. Under Trust A the widow, Mrs. Lewis, is given an absolute and unlimited right of encroachment upon the corpus of Trust A.

Under Trust B the trustee is directed to pay from the annual net income the sum of $150 per month for the support and maintenance of the minor daughter, Mary Page Lewis, until she reaches the age of twenty-one or marries after which the $150 per month is to be paid directly to her. The trustee is authorized to use an additional portion of the net annual income from Trust B for the education of the daughter provided that the total amount for support and education shall not exceed fifty percent of the net annual income. The remaining fifty percent of the net annual income under Trust B and all income not used for support and education of Mary Page Lewis is to be paid to the widow, Mrs. Florence Lewis, for her lifetime.

During the lifetime of the widow the trustee has authority to encroach upon the corpus of Trust B for the support of Mary Page Lewis only upon the written consent of the widow. However, after the death of the widow all income from Trust B may be spent in the sole discretion of the trustee for the support and education of Mary Page Lewis if she is under twenty-one. It must be paid to her if she is over twenty-one. Also after the death of the widow, the trustee has the sole discretion to encroach upon the corpus of Trust B for the support and maintenance of the daughter, Mary Page Lewis. After the death of the widow, Mrs. Frank Lewis, the corpus of Trust B is to be paid as follows: One-fourth to Mary Page Lewis when she reaches the age of twenty-five and one-third of the remainder when she reaches age thirty, making a total of fifty percent of the corpus to be paid to Mary Page Lewis. The income from the remainder, the other fifty percent of the corpus, is to be paid to Mary Page Lewis for the remainder of her life and on her death the remain-

ing corpus is to be paid to her children in equal shares and if there be no children then it is to be paid to the testator's brother, T. Walker Lewis, Jr., if he be alive and if not, then in equal shares to his children. Under Trust B subparagraph (5), the trustee is given sole discretion to encroach upon the corpus of Trust B for the benefit of the widow if, in the judgment of the trustee, the widow has insufficient income from all other sources on which to live adequately taking into consideration her manner of living during the lifetime of the testator.

Item VI of the will, which enumerates the various powers and duties of the trustee, contains the following provision regarding the charging of encroachments which resulted in the present lawsuit:

"(n) To charge Trusts A and B equally with respect to any encroachments made for the benefit of my wife, Florence, it being my desire to maintain the corpus of each trust created hereunder at approximately the same level."

His Honor the Chancellor found that the dominant purpose of the testator was to provide for his wife and that the plain words of Item VI (n) could not be ignored and that all encroachments received by the widow, whether under authority of Trust A or Trust B, must be charged equally to the corpus of Trusts A and B. In answer to the insistence of appellants that the practical result of such construction could be to deplete Trust B since the widow had the unrestricted right of encroachment under Trust A, the Chancellor's opinion was that this could happen only if the widow used bad faith in making encroachments and that the court would not presume or anticipate bad faith on the part of Mrs. Lewis.

The court suggested that when the trustee or the beneficiaries under Trust B felt that the widow was exercising her right of encroachment in bad faith, the matter could and should be then presented to the Chancellor for further action.

There is no substantial dispute between the parties as to the principles of law applicable to the case at bar. The parties are agreed that the intention of a testator is to be gathered from a study of the entire will in light of surrounding facts and circumstances. Burton v. Kinney, 191 Tenn. 1, 231 S.W.2d 356, 19 A.L.R.2d 366; Nashville Trust Co. v. Johnson, 34 Tenn.App. 197, 236 S.W.2d 100; Podesta v. Podesta, 28 Tenn.App. 282, 189 S.W.2d 413.

When the controlling or predominant purpose of the testator is expressed the court has duty to effectuate such purpose and to construe all subsidiary clauses to bring them into subordination to such purpose and the language of a single sentence is not to control as against the evident purpose and intent of the testator shown by the whole will. Every word or clause of a will will be given effect if possible, and no part of it will be rejected where it can be reconciled with other parts of the will and given reasonable effect. McClure v. Keeling, 163 Tenn. 251, 43 S.W.2d 383; East v. Burns, 104 Tenn. 169, 56 S.W. 830; First American National Bank v. Cole, 1963, 211 Tenn. 213, 364 S.W.2d 875.

To determine the dominant purpose of the testator Lewis we must study the entire will:

Item I provides for the payment of debts and all inheritance taxes and subjects all life insurance policies payable to the estate to the payment of debts of the testator.

Item II confirms the title of the widow to all houshold goods, furnishings, automobiles, etc.

Item III devises all of the residuary estate to the First National Bank of Memphis as trustee for the establishment of two testamentary trusts as follows:

"With respect to Trust A:

(1) My Trustee shall pay the net income from Trust A to my said wife in monthly installments, if convenient, but at no less frequent interval than quarterly as long as she shall live.

(2) Upon the death of my wife, the entire amount, including income remaining in said Trust A, shall be distributed to such person or persons or to the estate of my said wife, free of all trusts created herein, in such manner and in such proportions as she may designate and appoint in and by her last will and testament. Such power of appointment shall be exercisable by my said wife exclusively and in all events. My Trustee may rely upon an instrument admitted to probate in any jurisdiction as the last will and testament of my said wife, but if it has no written notice of the existence of such a will within a period of six months after her death, my Trustee may assume that she died intestate.

(3) In the event my said wife fails to exercise this said power of appointment or dies intestate, my Trustee shall pay the balance thereof to my wife's son, DeWitt M. Shy, Jr., if he be living, but in the event he is not then alive, the balance remaining in Trust A shall become part of and be added to Trust B and shall be administered and disposed of in accordance with the provisions of said Trust B.

(4) In the event that my wife does not survive me, I then give, devise and bequeath this portion of my estate, that is, the portion which would otherwise comprise Trust A, to my wife's son, DeWitt M. Shy, Jr., if alive, but if he be then not living, then this portion of my estate shall become a part of and shall be added to Trust B and shall be administered and disposed of in accordance with the provisions of said Trust B.

(5) If the said DeWitt M. Shy, Jr. be less than thirty-five (35) years of age at the time he would receive any bequest hereunder, then I give, devise and bequeath the share he would take in trust to the First National Bank of Memphis, as Trustee, for the following purposes:

(a) During the minority of the said DeWitt M. Shy, Jr., my trustee shall pay the net income arising from this trust to such person as my Trustee, in the exercise of its discretion, may elect to be used for the education, maintenance and support of said minor, or as much of said net income as my Trustee, in its discretion, deems advisable.

(b) At any time as my Trustee deems advisable, in its discretion, my Trustee may encroach upon the corpus of this trust if reasonably necessary for the support, maintenance and education of the said DeWitt M. Shy, Jr.

(c) When the said DeWitt M. Shy, Jr. reaches the age of twenty-one (21), my Trustee shall pay all the income arising from this trust to him until the termination of this trust.

(d) When the said DeWitt M. Shy, Jr. attains the age of twenty-one (21), my Trustee shall distribute and convey to him one-fourth (¼) of the corpus of

this trust; when he attains the age of twenty-five (25), my trustee shall convey and distribute to him one-third (⅓) of the then corpus of this trust; when he attains the age of thirty (30) my Trustee shall convey and distribute to him one-half (½) of the then corpus of this trust; and when he reaches the age of thirty-five (35), the remaining balance thereof.

(e) If the said DeWitt M. Shy, Jr. dies prior to the termination of this trust as above provided, then any remaining corpus thereof shall be added to and become a part of Trust B and shall be administered and distributed pursuant to its provisions.

It is my desire and intention that my wife, Florence, have the right and authority to encroach upon the corpus of this trust at any time when necessary for her well-being, comfort, maintenance and support. My Trustee is hereby expressly directed upon the written request of my wife, Florence, to encroach upon the corpus of this trust to such extent as she may in writing direct. My Trustee shall thereupon make the encroachments and deliver to my wife the amount of money so requested by her in writing and her written request for the same shall be a full and complete discharge of my Trustee as to the propriety of said encroachment and as to such amount of money. My wife's judgment and discretion in making such written request for encroachments upon the corpus of this trust shall not be subject to question or approval by my Trustee, by any Court or anyone whomsoever. She shall have the right to make this encroachment as often as she may consider the same necessary.

With respect to Trust **B**:

(1) From the net income of this trust my Trustee shall pay first the sum of One Hundred and Fifty ($150.00) Dollars per month to my former wife, Patricia M. Adams, to be expended by her solely and exclusively for the maintenance, support and benefit of my minor daughter, Mary Page Lewis, until my said minor daughter reaches the age of twenty-one (21) or marries. In the event of the death of the said Patricia M. Adams prior to the time that my said minor daughter either reaches the age of twenty-one (21) or marries, then said monthly payments shall be made to such person or persons as my Trustee may select in the exercise of its discretion. When my said minor daughter either attains the age of twenty-one (21) or marries, then my Trustee thereafter shall pay the sum of One Hundred and Fifty ($150.00) Dollars per month to my said daughter.

(2) It being my wish and desire to provide for the education of my said minor daughter, my Trustee shall out of the income from this said trust expend whatever sum or sums as may be necessary to provide my said minor daughter with that type of education which I would provide for her if living, including not only preparatory or boarding school education, but college education as well.

(3) My Trustee shall be governed with respect to the following specific directions in connection with the education of my said minor daughter.

(a) As long as my wife, Florence, is alive, my Trustee shall not expend annually for educational purposes more than the difference between the total of said One Hundred and Fifty ($150.00) Dollar monthly

payments, to-wit $1,800.00 and fifty (50%) percent of the net annual income of this trust, except with the written consent and approval of my wife, Florence.

(b) As long as my wife, Florence, is living, my Trustee may, with her written consent and approval, expend as much as the entire net income from this trust remaining after payment of the said One Hundred and Fifty ($150.00) Dollar monthly payments for such educational purposes and likewise may encroach upon the corpus hereof, if necessary, for such educational purposes with the written consent and approval of my wife, Florence.

(c) If my wife, Florence, is not living then my Trustee may, in its discretion, for such educational purposes expend as much as the balance of the net annual income from this trust remaining after payment of said One Hundred and Fifty ($150.00) Dollar monthly payments and, likewise, if my wife not be living, my Trustee may encroach upon the corpus, if necessary, for such educational purpose. However, in any event, if my wife, Florence, not be living I expressly direct that my Trustee shall take whatever steps as may be necessary to insure that any and all sums which it pays out for the educational needs of my said daughter be paid for her benefit and her benefit alone and no one else's.

(d) In the selection of a preparatory school, it is my desire that my daughter attend any such school or schools located in the City or the surrounding area of her then residence, and that she not be

sent away to boarding school unless there is no suitable private preparatory school in the City or surrounding area of her then residence.

(4) My Trustee shall pay the remaining income from this trust, if there be any, in monthly installments, if convenient, but at no less frequent interval than quarterly, to my wife, Florence during her natural life.

(5) If, from time to time, the income available to my said wife under the provisions of this will and all other income available to her of which the Trustee shall have knowledge shall be insufficient to provide adequately for her comfort, support, maintenance and welfare, taking into consideration her manner of living during my lifetime, but not taking into consideration the encroachment authority available to her with respect to Trust A, then my Trustee may pay to her out of the corpus of Trust B such sum or sums as it, in its discretion, deems advisable for such purposes. The judgment of my Trustee as to the propriety and amount of such encroachments shall be binding and conclusive upon all persons whomsoever.

(6) If, from time to time, the amount available to my said minor daughter under the provisions of this Item and all other income available to her of which the Trustee shall have knowledge shall be insufficient to provide adequately for her comfort, support, maintenance and welfare, taking into consideration her manner of living during my lifetime, then my Trustee may pay to her out of the corpus of Trust B such sum or sums as it, in its discretion, deems advisable for such purposes. The judgment of my Trustee as to the propriety and amount of such encroachments shall be binding and conclusive upon all persons whomsoever. However, my Trustee shall

make no such encroachment during the lifetime of my wife, Florence, except with her written consent and approval, and if she should not be alive, I direct with respect to encroachments made during the minority of my said minor daughter, that my Trustee take such steps as are necessary to insure that any such sum or sums are expended for the sole benefit of my minor daughter and no one else's.

(7) In the event of the death of my wife, Florence, during the minority of my said daughter, my Trustee shall thereafter administer this said trust in accordance with the paragraphs hereof numbered (1), (2), (3) and (6). After my said minor daughter reaches the age of twenty-one (21) if my wife, Florence, is then not living, my Trustee shall thereafter pay to my said daughter the entire annual income from this trust for her life in convenient installments, or if my wife, Florence, is then living when my said daughter reaches the age of twenty-one (21), then from and after the death of my wife, Florence, my Trustee shall pay to my said daughter the entire annual income from this trust for her life in convenient installments.

At age twenty-five (25), if living, my Trustee shall convey to my said daughter, one-fourth (¼) of the corpus of this trust and at age thirty (30), if living, shall convey to her one-third (⅓) of the then corpus of this trust.

On the death of my said daughter, Trust B shall terminate, and my Trustee shall convey and distribute the remaining corpus of Trust B to my said daughter's children in equal shares, and if there be none, then to my brother, T. Walker Lewis, Jr., if he be alive and if not, then in equal shares to his children.

(8) In no event whatsoever shall this trust terminate for any reason or any partial distribution thereof be made before the death of my wife, Florence.

(9) If any contingent beneficiary of this trust shall be a minor, the share of such minor shall be held in trust until it becomes twenty-one (21) years of age, at which time his share of the trust shall be delivered to him. During minority, my Trustee is authorized to make such payments for the maintenance, care, education and support to or for the benefit of such minors as in its sole discretion it may deem proper. All such payments shall be a full release to my Trustee and shall not be questioned by any subsequent beneficiary.

If any provision of this Will should violate the statute of perpetuities, this provision shall be void and of no effect and in all events, all trusts under this will shall terminate no later than twenty-one (21) years after the death of the last survivor of myself and all beneficiaries hereunder living at the date of my death."

Item IV is as follows:

"I desire that my wife, Florence, have the right to select a successor or substitute Trustee at any time or times that she may see fit and for reasons personal to her. Therefore, during the lifetime of my wife, Florence, she shall have the unqualified right at any time or times to designate in writing as successor or substitute Trustee with respect to both trusts, any national banking institution organized under the laws of the United States of America."

Item V provides that the interests of the beneficiaries shall not be subject to assignment or transfer and not

subject to legal execution or process for debts of the beneficiaries, past or future.

Item VI delineates the duties and obligations of the trustee none of which are involved on this appeal except subparagraph (n) copied above relating to the charging of encroachments.

Item VII names the widow, Mrs. Florence Lewis, as executrix without bond and if she be not alive or does not desire to serve, the First National Bank of Memphis is named as alternate executor without bond either as executor or trustee.

At the time of the execution of the will, testator was in his early 40's. He had a wife and stepson living in his household, and he had a teen-age daughter living with her mother in Wilmington, Delaware. These three people were not only the objects of his bounty but he undoubtedly felt both legally and morally responsible for their future support and welfare. We find that the dominant purpose of the testator in preparing the will which we have before us was more than the desire to provide for his widow. Inseparable from his desire to provide for his widow was an overall plan to divide his net estate, after the payment of all inheritance taxes and indebtednesses, into two equal parts; one-half of his estate he wanted to go to his wife and stepson with the right of the wife to have all of such one-half in fee simple if she so desired. The other one-half of his estate he wanted to go to his nearest blood kin, that is, his daughter, Mary Page Lewis, and her children, the testator's grandchildren, but charged with a portion of the annual support of his widow. The testator not only wanted to guarantee his daughter's education but he wanted to make sure that

funds would be available for the support of his wife if she became in need regardless of what she may have done with the funds provided for her under Trust A. To accomplish this he provided in Trust B (5) that encroachments for the widow could be made on the corpus of Trust B only in the discretion of the trustee when the widow was in need of such encroachment for her maintenance and support as defined by the testator in Trust B (5).

We think it very significant that in Trust A the widow was given an unlimited right of encroachment even to the extent of depleting completely the funds in Trust A for any reason satisfactory to herself without permission or control of anyone and no such permission was granted in Trust B.

To charge one-half of all encroachments made by the widow under the authority of Trust A against the corpus of Trust B would substantially impair and render almost nugatory the discretionary powers granted the trustee under Trust B. Such charges could well result in the depletion of Trust B and thus defeat the dominant purpose of the testator without any bad faith on the part of the widow. A number of events come to mind which might occur and which probably came to the mind of the testator.

For instance, Mrs. Lewis might remarry and yield to the persuasion of her second husband to withdraw substantial amounts or maybe all of the corpus of Trust A to go into some unsuccessful business. To charge one-half of such an encroachment to Trust B under such circumstances could thwart the dominant purpose of the testator even though the widow and her second husband

acted in the best of faith toward everyone. Mr. Lewis apparently was a very successful businessman and we feel sure that he was fully conscious of the threat of inflation and the accompanying decrease in the purchasing power of the dollar to the extent that Mrs. Lewis might not be able to live in the manner to which she had been accustomed on the annual income which he had provided. In our opinion the testator set up the provisions of Trust B and made the safeguards against improvident encroachments not only for the protection of his daughter but for the protection of the widow also. He wanted to make sure that the widow never came to want. No such protection was afforded by Trust A and such protection would be greatly diminished by charging all encroachments by the widow one-half to the corpus of A and one-half to the corpus of B under the decree appealed from.

We hold that in order to effectuate the dominant purpose of the testator, Item VI (n) quoted above must be construed to refer only to encroachments made for the benefit of the widow under the authority of Trust B (5) by the corporate trustee. The trustee correctly charged the $12,500 encroachment made by the widow under Trust A to the corpus of Trust A and correctly charged the $1,750 encroachment made by the trustee under Trust B (5) one-half to the corpus of Trust A and one-half to the corpus of Trust B as provided by Item VI (n), supra.

Accordingly, the assignments of error are sustained and the decree of the lower court will be reversed and a decree entered in this court in accordance with this opinion. The cause will be remanded for further proceedings including the adjudication by the Chancellor

of fees for solicitors for the Trustee and the guardians ad litem. Such fees and all other costs in the court below and in this court will be paid one-half out of Trust A and one-half out of Trust B. Davis v. Price, 189 Tenn. 555, 226 S.W.2d 290; First American National Bank v. Cole, 211 Tenn. 213, 364 S.W.2d 875.

Avery, P. J. (W. S.), and Bejach, J., concur.